# EXHIBIT

# "A"

RUBINE & RUBINE LAW, LLC
By: SETH B. RUBINE, Esq.
I.D. #85113
65 Harristown Road, Suite 203
Glen Rock, New Jersey 07452
Tel: (201) 857-5815
Fax: (877) 533-9898
srubine@rubinelaw.com

*Filed and Attested by the
Office of Judicial Records
06 MAY 2019 11:35 am
A. SILIGRINI*

Attorneys for Plaintiff
Rite Aid Hdqtrs. Corp.

| | | |
|---|---|---|
| RITE AID HDQTRS CORP.<br>30 Hunter Lane<br>Camp Hill, PA 17011 | : | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY, PA |
| | : | |
| Plaintiff, | : | NO. |
| | : | |
| v. | : | MAY TERM, 2019 |
| | : | |
| IMAGE BY J&K, LLC<br>401 E. Pratt Street<br>Suite 423<br>Balitmore, Maryland 21202 | : | JURY TRIAL DEMANDED |
| | : | |
| and | : | |
| | : | |
| NATIONWIDE INSURANCE<br>One Nationwide Plaza<br>Columbus, Ohio 43215-2220 | : | |
| | : | |
| Defendants. | : | |

## CIVIL ACTION - COMPLAINT

### PARTIES

1.     Plaintiff, Rite Aid Hdqtrs Corp. (hereinafter referred to as "Rite Aid"), is

a Delaware corporation with its corporate headquarters located at 30 Hunter

Lane, Camp Hill, Pennsylvania 17011.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RITE AID HDQTRS CORP. | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| | : |
| | : |
| v. | :  No. |
| | : |
| IMAGE BY J&K, LLC and | : |
| NATIONWIDE MUTUAL INSURANCE | : |
| COMPANY | : |
| | : |
| **Defendants,** | : |
| | : |

### CERTIFICATE OF SERVICE

I, Bradley J. Vance, Esquire, attorney for Nationwide Mutual Insurance Company hereby certify that a true and correct copy of the within Notice of Removal was served upon all counsel listed below via E-Mail and First-Class Mail, postage prepaid:

Seth B. Rubine, Esquire
Rubine & Rubine Law, LLC
65 Harristown Road, Suite 203
Glen Rock, New Jersey 07452
srubine@rubinelaw.com

Image by J&K, LLC
401 E. Pratt Street
Suite 423
Baltimore, Maryland 21202


**REGER RIZZO & DARNALL LLP**

Date:

By: _____

Bradley J. Vance, Esquire
Attorney No. 58850
Cira Centre, 13th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 495-6500
Attorney for Defendant

2.     Rite Aid is authorized to conduct business in the State of New York and the Commonwealth of Pennsylvania, specifically in the City of Philadelphia.

3.     Defendant, Image by J&K, LLC (hereinafter referred to as "J&K") is a Corporation with its principal place of business located at 401 E. Pratt Street, Suite 423, Baltimore, MD 21202.

4.     J&K is licensed to conduct interior maintenance services, including floor care and cleaning, in the State of New York and the Commonwealth of Pennsylvania.

5.     Defendant, Nationwide Insurance (hereinafter referred to as "Nationwide"), is an Ohio corporation with its corporate headquarters located at One Nationwide Plaza, Columbus, Ohio 43215.

6.     Defendant, Nationwide is authorized to transact insurance business and issue policies of insurance within the State of New York and the Commonwealth of Pennsylvania.

## <u>VENUE</u>

7.     J&K contractually agreed to submit to personal jurisdiction in the Commonwealth of Pennsylvania.  A true and correct copy of the "Floor Care Preventative Service Agreement" between Rite Aid and J&K at section I, paragraph 6, which is incorporated herein and attached as **Exhibit "D."**

8.      Venue is proper in Philadelphia pursuant to Pa.R.C.P 2179(a)(2) and (b)(1).

## FACTS

9.      On April 11, 2016, Miriam Galarza commenced a personal injury action against Rite Aid and Enda Properties, LLC in the Supreme Court of New York, County of Kings, under Index No. 505611/2016. A true and correct copy of this Complaint is attached as **Exhibit "A."**

10.     Miriam Galarza alleges that on March 2, 2016, at approximately 11:00 p.m., she slipped and fell on a slippery substance on the floor inside the Rite Aid retail pharmacy store located at 1532-34 86th Street in Brooklyn, New York (hereinafter referred to as "The Property").

11.     On January 11, 2017, the parties signed and filed a Stipulation dismissing Enda Properties, LLC and further agreeing to allow plaintiff to file a Supplemental Summons and Amended Complaint to add defendants, Image by J&K LLC and Mansion of Maintenance, Inc. A true and correct copy of the aforementioned Stipulation is attached as **Exhibit "B."**

12.     Subsequently, on January 16, 2017, plaintiff's counsel filed a Supplemental Summons and Amended Complaint, true and correct copies of which are attached as **Exhibit "C."**

13.     At all times relevant herein, Rite Aid and J&K were parties to a valid and enforceable Floor Care Preventative Service Agreement (hereafter referred

Case ID: 190500100

to as "The Contract") requiring J&K to provide floor care maintenance services at the property. See **Exhibit "D."**

14.     Under the contract, J&K agreed to "maintain adequate procedures during and immediately following the performance of its Services to ensure: the safe and tenantable condition of the locations; and the safety of Rite Aid, its employees, invitees, customers and agents...." See **Exhibit "D"** at Section IV (SPECIFIC PROVISIONS), paragraph 2(a).

15.     Per the contract, J&K agreed to indemnify, defend, and hold Rite Aid harmless.   In **Exhibit "D,"** Section II (INDEMNIFICATION AND INSURANCE), paragraph 1, it states, in relevant part:

> Contractor acknowledges and agrees to indemnify, defend and hold Rite Aid harmless from and against any and all claims, losses, liability, damages, fines, sanctions and expenses, including reasonable attorney's fees arising or resulting, directly or indirectly in connection with any:
>
> a. intentional or negligent act or omission of Contractor or Contractor's agents or employees with respect to the performance of its obligations under this Agreement; . . . .

16.     Section II, paragraph 1 of The Contractor further states:

> Contractor shall further indemnify, defend and hold Rite Aid harmless from any and all liens and other encumbrances against the Locations on account of debts or claims alleged to be due from Contractor to any person, including any subcontractor employed by or under him, or to any supplier.

17.     By information and belief, J&K and/or its floor cleaning subcontractor, Mansion of Maintenance, Inc. were performing services per the

Contract at the property at the time of the alleged accident involving Miriam Galarza.

18.     Under the contract, J&K was required to carry comprehensive general liability insurance in the amount of $5,000,000.00 for both personal injury and contractual liability. See **Exhibit "D" at** Section II, paragraph 2(a).

19.     More importantly, The Contract also required J&K to provide additional insured status to Rite Aid and/or its Affiliated Companies and contains a No Cancellation Clause. See **Exhibit "D" at** Section II, paragraph 2(e), (1), (2).

20.     As per J&K's contractual obligations, it procured a policy of insurance through Nationwide designating Rite Aid Hdqtrs. Corp. and/or its affiliated companies as an additional insured. A true and correct copy of the Certificate of Liability Insurance is attached as **Exhibit "E."**

21.     The contract between Rite Aid and J&K commenced on January 1, 2016 and was for a period of two (2) years ending December 31, 2017, see **Exhibit "D."**

22.     The contract was, therefore, in full force and effect when the accident giving rise to the Galarza Complaint(s) occurred.

23.     On April 5, 2016, Rite Aid tendered its defense and indemnification to J&K. A true and correct copy of Rite Aid's tender correspondence dated April 5, 2016 is attached as **Exhibit "F."**

24.     To date there has been no response from J&K to Rite Aid's tender of defense and indemnification, nor has the filing of the Complaint and/or

Amended Complaint triggered J&K's contractual obligation to provide coverage to Rite Aid as an additional insured.

## COUNT ONE – BREACH OF CONTRACT
## AGAINST DEFENDANT, IMAGE BY J&k, LLC

25.    Rite Aid incorporates by reference the facts and allegations in the preceding paragraphs 1 through 24 of its Complaint as if fully set forth at length.

26.    At all times relevant, Rite Aid and J&K were parties to a valid and enforceable contract.

27.    At all times relevant, Rite Aid complied with its contractual obligations.

28.    J&K breached the contract by failing to satisfy various obligations under the contract, including, but not limited to, the following:

   a.    Failing to ensure the safe and tenantable condition of the locations; and the safety of Rite Aid, its employees, invitees, customers  and agents at the property;

   b.    Failing to indemnify, defend and hold Rite Aid harmless from and against any claims, losses, liability, damages, fines, sanctions, and expenses, including attorney's fees resulting directly or indirectly from its intention or negligent acts or omissions with respect to its obligations under the contract.

   c.    Failing to adhere to its obligation to provide coverage to Rite Aid as an additional insured entity.

29.    J&K's failure to fulfill its obligations under the contract has caused Rite Aid to suffer damages, including, but not limited to, monetary damages for the

claims made by its customer, Miriam Galarza, incurring costs for services not properly performed, and incurring legal fees to defend against Ms. Galarza's underlying personal injury action and to enforce the terms of the contract.

**WHEREFORE,** plaintiff, Rite Aid Hdqtrs Corp, demands judgment against defendant, Image by J&K, LLC, for compensatory damages and attorney fees in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with interest, costs and all other damages deemed appropriate at trial.

## COUNT TWO – NEGLIGENCE
## AGAINST DEFENDANT, IMAGE BY J&K, LLC

30.    Rite Aid incorporates by reference the facts and allegations in the preceding paragraphs 1 through 29 of its Complaint as if fully set forth at length.

31.    At all times relevant, J&K owed a duty of care to Rite Aid and its customers, including Miriam Galarza, to perform its contractual duties in a safe and non-negligent manner.

32.    J&K breached its duties to Rite Aid and its customers, including Miriam Galarza, as follows:

    a.    Failing to properly inspect the work performed by their agents, employees, representatives, and/or subcontractors;

    b.    Failing to warn Rite Aid and its customers, including Miriam Galarza of the dangerous, hazardous, and/or slippery floors that they knew or should have known about;

    c.    Failing to remedy, repair, remove and/or eliminate the dangerous, hazardous, and/or slippery conditions that they knew or should have known about;

    d.    Creating the dangerous, hazardous, and/or slippery conditions at the property;

e.  Negligently representing to Rite Aid and its customers, including Miriam Galarza, that the interior of the property was safe to traverse;

f.  Failing to provide floor care maintenance services at the property in a safe and complete manner;

g.  Failing to maintain adequate procedures during and following the performance of floor care maintenance services contemplated under the contract;

i.  Failing to hire, designate, and/or assign competent employees, servants, agents, and/or subcontractors to perform the floor care maintenance services at the property contemplated under the contract.

33.  J&K's negligence has caused Rite Aid to suffer damages, including, but not limited to, monetary damages for the claims made by its customers, Miriam Galarza, incurring costs for services not properly performed, and incurring legal fees to defend against Ms. Galarza's underlying personal injury action and to enforce the terms of the contract.

**WHEREFORE,** plaintiff, Rite Aid Hdqtrs Corp., demands judgment against defendant, Image by J&K, LLC, for compensatory damages and attorney fees in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with interest, costs and all other damages deemed appropriate at trial.

## COUNT THREE – BREACH OF CONTRACT
## AGAINST DEFENDANT, NATIONWIDE INSURANCE

34.  Rite Aid incorporates by reference the facts and allegations in the preceding paragraphs 1 through 33 of its Complaint as if fully set forth at length.

35.     At all times relevant, Rite Aid was an additional insured on a valid and enforceable insurance policy issued by Nationwide to J&K.

36.     At all times relevant, Rite Aid complied with its obligations under the contract and the terms of the applicable insurance policy.

37.     Nationwide breached the contract by failing and refusing to perform its obligations, including, but not limited to, failing to indemnify and hold Rite Aid harmless and failing to provide coverage to Rite Aid as an additional insured as required by the contract.

38.     Nationwide's failure to fulfill its obligations under the contract has caused Rite Aid to suffer damages, including, but not limited to, monetary damages for the claims made by its customer, Miriam Galarza, incurring costs for services not properly performed, and incurring legal fees to defend against Ms. Galarza's underlying personal injury action and to enforce the terms of the contract.

**WHEREFORE,** plaintiff, Rite Aid Hdqtrs Corp., demands judgment against defendant, Nationwide, for compensatory damages and attorney fees in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with interest, costs and all other damages deemed appropriate at trial.

### COUNT FOUR – BAD FAITH
### AGAINST DEFENDANT, NATIONWIDE INSURANCE

39.     Rite Aid incorporates by reference the facts and allegations in the preceding paragraphs 1 through 38 of its Complaint as if fully set forth at length.

Case ID: 190500100

40.    At all times relevant, Rite Aid was an additional insured on a valid and enforceable insurance policy issued by Nationwide to Image by J&K, LLC.

41.    At all times relevant, Rite Aid complied with its obligations under the contract and the terms of the applicable insurance policy.

42.    Nationwide has breached the contract by failing to honor and satisfy its obligations to Rite Aid as an additional insured under the insurance policy issued to J&K.

43.    Nationwide wrongfully denied and refused to honor and satisfy its duty to defend and indemnify Rite Aid as an additional insured under the insurance policy issued to J&K and has engaged in bad faith in violation of 42 Pa.C.S.A. §8371.

44.    Nationwide, by and through its affiliates, subsidiaries, and duly authorized agents, servants, workmen, and/or employees, engaged in the following conduct:

    a.    Treating Rite Aid with reckless disregard and indifference;

    b.    Acting in a deliberate, obstructive, and dilatory manner;

    c.    Wrongfully denying Rite Aid's claim without a reasonable basis;

    d.    Failing and/or refusing to pay for Rite Aid's damages in this covered claim without a reasonable basis;

    e.    Failing and/or refusing to pay Rite Aid's claim in a prompt and timely manner;

    f.    Failing and/or refusing to pay Rite Aid's claim without conducting a fair and reasonable investigation;

g       Failing to acknowledge and act promptly upon
        Rite Aid's written and/or verbal communication of its
        claim;

h.      Misrepresenting pertinent facts and/or contractual
        provisions relating to the insurance coverage issue;

i.      Misconstruing language in the contract and/or the
        insurance policy issued to J&K in its favor to support
        wrongful denial of the claim;

j.      Failing to reach a fair and equitable resolution of Rite
        Aid's claim despite clear liability under the contract
        and/or insurance policy issue issued to J&K;

k.      Willfully acting against Rite Aid's interests despite clear
        liability under the contract and/or insurance policy
        issued to J&K;

l.      Lacking a reasonable basis for denying Rite Aid's
        benefits under the insurance policy issued to J&K; and

m.      Deviating from insurance principle, practices, and
        industry standards known and followed by insurance
        companies in the area;

45.    Nationwide's bad faith and failure to fulfill its obligations under the

contract has caused Rite Aid to suffer damages, including, but not limited to,

monetary damages for the claims made by its customer, Miriam Galarza,

incurring costs for services not properly performed, and incurring legal fees to

defend against Ms. Galarza's underlying personal injury action and to enforce the

terms of the contract.

   **WHEREFORE**, plaintiff, Rite Aid Hdqtrs Corp., demands judgment against

defendant, Nationwide, for compensatory damages, punitive damages, and

attorneys' fees together within interest on Rite Aid's claim in an amount equal to

the prime rate, plus three percent (3%), and all other damages deemed appropriate at trial in an amount in excess of Fifty Thousand Dollars ($50,000.00).

Respectfully submitted.

RUBINE & RUBINE LAW, LLC

BY: _____

SETH B. RUBINE, ESQUIRE

Dated:   May 6, 2019

# EXHIBIT "A"

NYSCEF DOC. NO. 1                                                                    RECEIVED NYSCEF: 04/11/2016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

Index No.:

-------------------------------------------------------------X

**SUMMONS**

MIRIAM GALARZA,

Plaintiff designates Kings
County as the place of trial.

                              Plaintiff,

-against-

The basis of venue is:
Plaintiff's residence.

RITE AID OF NEW YORK, INC. and ENDA
PROPERTIES LLC,

Plaintiff resides at:
102 Bay 8th Street
Brooklyn, NY 11228

                             Defendants.

-------------------------------------------------------------X

**To the above named Defendant(s):**

      **You are hereby summoned** to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
       April 11, 2016

                                         _____
                                         ALBERT K. KIM
                                       LAW OFFICES OF
                                       MICHAEL S. LAMONSOFF, PLLC
                                       Attorneys for Plaintiff
                                       MIRIAM GALARZA
                                       Financial Square at 32 Old Slip - 8th FL
                                       New York, New York 10005
                                       (212) 962-1020
                                       Our File No.: 24893

TO:    RITE AID OF NEW YORK, INC.
       (Via Secretary of State)
       c/o C T Corporation System
       111 Eighth Avenue
       New York, New York 10011

                                                            Case ID: 190500100

ENDA PROPERTIES LLC
(Via Secretary of State)
c/o M Blaymore
97 Powerhouse Road
Roslyn Heights, New York 11577

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------X
MIRIAM GALARZA                                                    Index No.:

                          Plaintiff,

        -against-                                          **VERIFIED COMPLAINT**

RITE AID OF NEW YORK, INC. and ENDA
PROPERTIES LLC,

                          Defendants.
-------------------------------------------------------------------X

      Plaintiff, **MIRIAM GALARZA**, by her attorneys, **LAW OFFICES OF MICHAEL S.**

**LAMANSOFF, PLLC**, complaining of the defendants herein, respectfully alleges, upon

information and belief, as follows:

      1.      The plaintiff, **MIRIAM GALARZA**, at all times hereinafter mentioned, was and

still is a resident of the County, City and State of New York.

      2.      That this cause of action falls within one or more exemptions set forth in CPLR

§§ 1601 and 1602.

      3.      That this action is being commenced within the time prescribed by statute for the

commencement of lawsuits and in accordance with all legal requirements.

      4.      That at all times hereinafter alleged, and upon information and belief, the

defendant, **RITE AID OF NEW YORK, INC.**, conducted business within the State of New

York.

      5.      That at all times hereinafter alleged, and upon information and belief, the

defendant, **RITE AID OF NEW YORK, INC.**, was and still is a domestic business corporation

organized and existing under and by virtue of the laws of the State of New York.

6.      That at all times hereinafter alleged, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, was and still is a foreign corporation authorized to do business under and by virtue of the laws of the State of New York.

7.      That at all times hereinafter alleged, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, maintained a principal place of business in the County of New York, State of New York.

8.      That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.**, performed work at the subject premises, located at 1532-34 86th Street, County of Kings, City and City and State of New York.

9.      That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.**, owned the subject premises, located at 1532-34 86th Street, County of Kings, City and City and State of New York.

10.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.**, possessed the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

11.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.**, maintained the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

12.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.**, controlled the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

13.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.,** managed the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

14.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.,** operated the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

15.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.,** was the lessor of the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

16.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.,** was the lessee of the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

17.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.,** was the managing agent of the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

18.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.,** was in possession and control of, and through its agents, licensees, servants and/or employees had full power and authority to operate, manage, conduct, maintain and control the subject premises located at 1532-34 86th Street, County of Kings, City and State of New York.

19.     That at all times hereinafter alleged, and upon information and belief, the defendant, **ENDA PROPERTIES LLC,** conducted business within the State of New York.

Case ID: 190500100

5 of 15

20.     That at all times hereinafter alleged, and upon information and belief, the defendant, **ENDA PROPERTIES LLC**, was a domestic limited liability company organized and existing under and by virtue of the laws of the State of New York.

21.     That at all times hereinafter alleged, and upon information and belief, the defendant, **ENDA PROPERTIES LLC**, was a foreign limited liability company authorized to do business under and by virtue of the laws of the State of New York.

22.     That at all times hereinafter alleged, and upon information and belief, the defendant, **ENDA PROPERTIES LLC**, maintained a principal place of business in the County of Nassau, State of New York.

23.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **ENDA PROPERTIES LLC**, performed work at the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

24.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **ENDA PROPERTIES LLC**, owned the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

25.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **ENDA PROPERTIES LLC**, possessed the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

26.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **ENDA PROPERTIES LLC**, maintained the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

27.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **ENDA PROPERTIES LLC**, controlled the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

28.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **ENDA PROPERTIES LLC**, managed the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

29.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **ENDA PROPERTIES LLC**, operated the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

30.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **ENDA PROPERTIES LLC**, was the lessor of the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

31.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **ENDA PROPERTIES LLC**, was the lessee of the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

32.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **ENDA PROPERTIES LLC**, was the managing agent of the subject premises, located at 1532-34 86th Street, County of Kings, City and State of New York.

33.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **ENDA PROPERTIES LLC**, was in possession and control of, and through its agents, licensees, servants and/or employees had full power and authority to operate, manage, conduct, maintain and control the subject premises located at 1532-34 86th Street, County of Kings, City and State of New York.

34.    That on March 2, 2016, and at all times hereinafter mentioned, the plaintiff, **MIRIAM GALARZA**, was lawfully on the subject premises.

35.    That on March 2, 2016, the plaintiff, **MIRIAM GALARZA**, was on the subject premises when she was caused to slip and fall.

36.    That on March 2, 2016, the plaintiff, **MIRIAM GALARZA**, was caused to slip and fall and become injured due to a dangerous, hazardous and trap-like condition while properly and lawfully on the subject premises.

## AS AND FOR A FIRST CAUSE OF ACTION FOR NEGLIGENCE AGAINST DEFENDANT RITE AID OF NEW YORK, INC.

37.    The plaintiff repeats and realleges all the foregoing paragraphs with the same force and effect as though fully set forth herein.

38.    That at all times hereinafter mentioned, the defendant, **RITE AID OF NEW YORK, INC.**, had a duty to keep the subject premises maintained, in a state of good repair and free from all defects, traps, hazards and dangerous conditions constituting a danger and menace to persons lawfully and properly upon the subject premises.

39.    That at all times hereinafter mentioned, the defendant, **RITE AID OF NEW YORK, INC.**, had a duty to warn, barricade, and provide signage to others of any and all defects, traps, hazards and dangerous conditions constituting a danger and menace to persons lawfully and properly upon the subject premises.

40.    That on March 2, 2016, the plaintiff, **MIRIAM GALARZA**, was caused to slip and fall and be severely injured due to a dangerous, hazardous and trap-like condition while properly and lawfully at the aforementioned subject premises.

41.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, caused and created the dangerous, hazardous and trap-like condition at the aforementioned subject premises.

42.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, failed to properly correct the dangerous, hazardous and trap-like condition at the aforementioned subject premises.

43.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, failed to give proper warning and take the necessary precautions to protect persons lawfully upon the subject premises of the dangerous, hazardous, and trap-like conditions.

44.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, failed to properly inspect the subject premises and thus allowed the dangerous, hazardous and trap-like condition to exist.

45.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, failed to properly maintain the subject location and thus allowed the dangerous, hazardous and trap-like condition to exist.

46.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, failed to properly manage the subject location and thus allowed the dangerous, hazardous and trap-like condition to exist.

47.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, failed to properly oversee the subject premises and thus allowed the dangerous, hazardous and trap-like condition to exist.

48.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, allowed the dangerous, hazardous and trap-like condition to exist at the aforesaid location.

49.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, knew or should have known about the dangerous, hazardous and trap-like condition, failed to correct, warn and/or take proper precautions to protect individuals lawfully and properly upon the subject location and, more particularly, the plaintiff herein.

50.     That the foregoing accident and resulting personal injuries to the plaintiff were caused solely and wholly by the negligence, carelessness, culpable acts of this defendant and/or the defendants jointly and severally through their agents, servants and/or employees.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT ENDA PROPERTIES LLC

51.     The plaintiff repeats and realleges all the foregoing paragraphs with the same force and effect as though fully set forth herein.

52.     That at all times hereinafter mentioned, the defendant, **ENDA PROPERTIES LLC**, had a duty to keep the subject premises maintained, in a state of good repair and free from all defects, traps, hazards and dangerous conditions constituting a danger and menace to persons lawfully and properly upon the subject premises.

53.     That at all times hereinafter mentioned, the defendant, **ENDA PROPERTIES LLC**, had a duty to warn, barricade, and provide signage to others of any and all defects, traps, hazards and dangerous conditions constituting a danger and menace to persons lawfully and properly upon the subject premises.

54.     That on March 2, 2016, the plaintiff, **MIRIAM GALARZA**, was caused to slip and fall and be severely injured due to a dangerous, hazardous and trap-like condition while properly and lawfully at the aforementioned subject premises.

55.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **ENDA PROPERTIES LLC**, caused and created the dangerous, hazardous and trap-like condition at the aforementioned subject premises.

56.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **ENDA PROPERTIES LLC**, failed to properly correct the dangerous, hazardous and trap-like condition at the aforementioned subject premises.

57.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **ENDA PROPERTIES LLC**, failed to give proper warning and take the necessary precautions to protect persons lawfully upon the subject premises of the dangerous, hazardous, and trap-like conditions.

58.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **ENDA PROPERTIES LLC**, failed to properly inspect the subject premises and thus allowed the dangerous, hazardous and trap-like condition to exist.

59.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **ENDA PROPERTIES LLC**, failed to properly maintain the subject location and thus allowed the dangerous, hazardous and trap-like condition to exist.

60.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **ENDA PROPERTIES LLC**, failed to properly manage the subject location and thus allowed the dangerous, hazardous and trap-like condition to exist.

61.   That at all times hereinafter mentioned, and upon information and belief, the defendant, **ENDA PROPERTIES LLC**, failed to properly oversee the subject premises and thus allowed the dangerous, hazardous and trap-like condition to exist.

62.   That at all times hereinafter mentioned, and upon information and belief, the defendant, **ENDA PROPERTIES LLC**, allowed the dangerous, hazardous and trap-like condition to exist at the aforesaid location.

63.   That at all times hereinafter mentioned, and upon information and belief, the defendant, **ENDA PROPERTIES LLC**, knew or should have known about the dangerous, hazardous and trap-like condition, failed to correct, warn and/or take proper precautions to protect individuals lawfully and properly upon the subject location and, more particularly, the plaintiff herein.

64.   That the foregoing accident and resulting personal injuries to the plaintiff were caused solely and wholly by the negligence, carelessness, culpable acts of this defendant and/or the defendants jointly and severally through their agents, servants and/or employees.

## AS TO ALL DEFENDANTS

65.   The plaintiff repeats and realleges all of the foregoing paragraphs with the same full force and effect as though fully stated herein.

66.   That as a result of the negligence, carelessness, and culpable acts of the defendants and the accident described above, plaintiff, **MIRIAM GALARZA**, was caused to sustain severe personal injuries and was rendered sick, sore, lame and disabled and did incur and will continue to incur medical expenses.

Case ID: 190500100

67.     That as a result of the negligence of the defendants, the plaintiff, **MIRIAM GALARZA,** has been rendered incapacitated and unable to fulfill her normal activities and profession.

68.     That one or more of the exceptions of CPLR Article 16 apply to the facts and circumstances of this action.

69.     That as a result of the incident and negligence of the defendants and their agents, servants and/or employees, plaintiff, **MIRIAM GALARZA,** became sick, sore, lame and disabled, and has been damaged in a sum in excess of the jurisdictional limits of all lower courts existing in the State of New York.

70.     That as a result of the incidence and negligence of the defendants and their agents, servants and/or employees, plaintiff, **MIRIAM GALARZA,** experienced pain and suffering, was denied quality and enjoyment of life and sustained economic damages in a sum in excess of the jurisdictional limits of all lower courts existing in the State of New York.

**WHEREFORE,** the plaintiff, **MIRIAM GALARZA,** demands judgment against the defendants in an amount that exceeds the jurisdictional limits of the lower courts, all together with the costs and disbursements of this action.

Dated: New York, New York
     April 11, 2016

Yours, etc.,

ALBERT K. KIM
LAW OFFICES OF
MICHAEL S. LAMONSOFF, PLLC
Attorneys for Plaintiff
MIRIAM GALARZA
Financial Square at 32 Old Slip - 8th FL
New York, New York 10005
(212) 962-1020
File No.: 24893

## ATTORNEY'S VERIFICATION

**ALBERT K. KIM**, an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

I am an attorney at **LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC**, attorneys of record for Plaintiff, **MIRIAM GALARZA**. I have read the annexed **COMPLAINT** and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files.

This verification is made by me because Plaintiff is not presently in the county wherein I maintain my offices.

DATED:      New York, New York
            April 11, 2016

_____
ALBERT K. KIM

Case ID: 190500100

Index No.:
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

MIRIAM GALARZA,

                                            Plaintiff,

          -against-

RITE AID OF NEW YORK, INC. and ENDA PROPERTIES LLC,

                                            Defendants.

---

## SUMMONS & VERIFIED COMPLAINT

---

### LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC
*Attorneys for Plaintiff*
**Financial Square at 32 Old Slip – 8th Floor**
**New York, New York 10005**
**(212) 962-1020**

---

Pursuant to 22NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of the State of New York, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

_____
ALBERT K. KIM

Case ID: 190500100

15 of 15

# EXHIBIT "B"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------X
MIRIAM GALARZA,                                            Index No.: 505611/2016E

                                        Plaintiff(s),

                    -against-                              **STIPULATION**

RITE AID OF NEW YORK, INC. and ENDA
PROPERTIES LLC,

                                        Defendant(s).
-----------------------------------------------------------------X

**IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned,

attorneys for the respective parties herein, that Plaintiff shall be granted leave to add the

proposed defendants, IMAGE BY J & K LLC and MANSION OF MAINTENANCE INC., to

this action; and it is further

**STIPULATED AND AGREED**, that Plaintiff's cause(s) of action as against Defendant,

ENDA PROPERTIES LLC, <u>only</u> is dismissed without prejudice; and it is further

**STIPULATED AND AGREED**, that the Plaintiff shall be granted leave to supplement

the Summons and amend the Complaint of the within action; and it is further

**STIPULATED AND AGREED**, that the Supplemental Summons and Amended

Complaint shall be deemed served on Defendant, RITE AID OF NEW YORK, INC., upon

mailing, by first class mail, a copy of said Supplemental Summons and Amended Complaint to

RUBINE & RUBINE LAW, LLC, the attorneys for the aforementioned Defendants; and it is

further

**STIPULATED AND AGREED**, that the new caption of the within action shall read as

follows:

1

From: Sandra Ferrari   Fax: (646) 867-7072        To:        Fax: (877) 633-8888        p 3 of 3  01/10/2017 1:48 PM

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------X
MIRIAM GALARZA,                                    Index No.: 505611/2016E

                              Plaintiff(s),

             -against-

RITE AID OF NEW YORK, INC., IMAGE BY J & K
LLC, and MANSION OF MAINTENANCE INC.,

                              Defendant(s).
-------------------------------------------------------------X

and it is further

        **STIPULATED AND AGREED,** that a facsimile or electronic mail copy of this

stipulation shall be deemed an original for all intents and purposes.

Dated: New York, New York
        January 10, 2017

LAW OFFICES OF
MICHAEL S. LAMONSOFF, PLLC

By: _____
        Albert K. Kim, Esq.
Attorneys for Plaintiff
MIRIAM GALARZA
Financial Square
32 Old Slip, 8th Floor
New York, New York 10005
T: 212-962-1020
F: 646-867-7045
akim@msllegal.com

RUBINE & RUBINE LAW, LLC

By: _____
        SETH B. RUBINE, ESQ.
Attorneys for Defendants
RITE AID OF NEW YORK INC., and ENDA
PROPERTIES LLC
65 Harristown Road, Suite 203
Glen Rock, New Jersey 07452
T: 201-857-5815
F: 877-533-9898

2

# EXHIBIT "C"

Case ID: 190500100

NYSCEF DOC. NO. 10                                                                RECEIVED NYSCEF: 01/16/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------X

MIRIAM GALARZA,

                                        Plaintiff,

                -against-

RITE AID OF NEW YORK, INC., IMAGE BY J & K LLC,
and MANSION OF MAINTENANCE INC.,

                                        Defendants.

-------------------------------------------------------------X

Date of Purchase:  04/11/2016
Index No.: 505611/2016E

**SUPPLEMENTAL
SUMMONS**

Plaintiff designates Kings
County as the place of trial.

The basis of venue is:
Plaintiff's residence.

Plaintiff resides at:
102 Bay 8th Street
Brooklyn, NY 11228

**To the above named Defendant(s):**

      **You are hereby summoned** to answer the complaint in this action, and to serve a copy
of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance on the Plaintiff's attorneys within twenty days after the service of this summons,
exclusive of the day of service, where service is made by delivery upon you personally within
the state, or, within 30 days after completion of service where service is made in any other
manner.  In case of your failure to appear or answer, judgment will be taken against you by
default for the relief demanded in the complaint.

Dated: New York, New York
       January 16, 2017

                                    _____
                                    ALBERT K. KIM
                                    LAW OFFICES OF
                                    MICHAEL S. LAMONSOFF, PLLC
                                    Attorneys for Plaintiff
                                    MIRIAM GALARZA
                                    Financial Square at 32 Old Slip - 8th FL
                                    New York, New York 10005
                                    (212) 962-1020
                                    Our File No.: 24893

TO:     RITE AID OF NEW YORK, INC.
        c/o Ryan Byrnes, Esq.
        RUBINE & RUBINE LAW, LLC
        65 Harristown Road, Suite 203
        Glen Rock, New Jersey 07452

                                                                        Case ID: 190500100

                                    1 of 2

IMAGE BY J & K LLC
(Via Secretary of State)
P.O. Box 2308
Forest, Virginia 24551

MANSION OF MAINTENANCE INC.
(Via Secretary of State)
53 East Cedar Street
Central Islip, New York 11722

Case ID: 190500100

NYSCEF DOC. NO. 11                                                                RECEIVED NYSCEF: 01/16/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------------X     Date of Purchase: 04/11/2016
MIRIAM GALARZA,                                                         Index No.: 505611/2016E

                                    Plaintiff,

                   -against-                                            **VERIFIED AMENDED**
                                                                       **COMPLAINT**
RITE AID OF NEW YORK, INC., IMAGE BY J & K
LLC, and MANSION OF MAINTENANCE INC.,

                                    Defendants.
------------------------------------------------------------------X

      Plaintiff, **MIRIAM GALARZA**, by her attorneys, **LAW OFFICES OF MICHAEL S.**

**LAMANSOFF, PLLC**, complaining of the defendants herein, respectfully alleges, upon

information and belief, as follows:

      1.     The plaintiff, **MIRIAM GALARZA**, at all times hereinafter mentioned, was and

still is a resident of the County, City and State of New York.

      2.     That this cause of action falls within one or more exemptions set forth in CPLR

§§ 1601 and 1602.

      3.     That this action is being commenced within the time prescribed by statute for the

commencement of lawsuits and in accordance with all legal requirements.

      4.     That at all times hereinafter alleged, and upon information and belief, the

defendant, **RITE AID OF NEW YORK, INC.**, conducted business within the State of New

York.

      5.     That at all times hereinafter alleged, and upon information and belief, the

defendant, **RITE AID OF NEW YORK, INC.**, was and still is a domestic business corporation

organized and existing under and by virtue of the laws of the State of New York.

6.     That at all times hereinafter alleged, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, was and still is a foreign corporation authorized to do business under and by virtue of the laws of the State of New York.

7.     That at all times hereinafter alleged, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, maintained a principal place of business in the County of New York, State of New York.

8.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.**, performed work at the premises located at 1532-34 86th Street, County of Kings, City and State of New York (hereinafter, "subject premises").

9.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.**, owned the subject premises.

10.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.**, possessed the subject premises.

11.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.**, maintained the subject premises.

12.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.**, controlled the subject premises.

13.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.**, managed the subject premises.

14.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.**, operated the subject premises.

15.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.,** was the lessor of the subject premises.

16.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.,** was the lessee of the subject premises.

17.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.,** was the managing agent of the subject premises.

18.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **RITE AID OF NEW YORK, INC.,** was in possession and control of, and through its agents, licensees, servants and/or employees had full power and authority to operate, manage, conduct, maintain and control the subject premises located at 1532-34 86th Street, County of Kings, City and State of New York.

19.     That at all times hereinafter alleged, and upon information and belief, the defendant, **IMAGE BY J & K LLC,** conducted business within the State of New York.

20.     That at all times hereinafter alleged, and upon information and belief, the defendant, **IMAGE BY J & K LLC,** was and still is a foreign limited liability company duly authorized to do business in the State of New York.

21.     That at all times hereinafter alleged, and upon information and belief, the defendant, **IMAGE BY J & K LLC,** maintained a principal place of business in the State of Virginia.

22.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **IMAGE BY J & K LLC**, performed work at the subject premises.

23.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **IMAGE BY J & K LLC**, maintained the subject premises.

24.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **IMAGE BY J & K LLC**, controlled the subject premises.

25.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **IMAGE BY J & K LLC**, managed the subject premises.

26.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **IMAGE BY J & K LLC**, operated the subject premises.

27.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **IMAGE BY J & K LLC**, entered into certain agreements with defendant, **RITE AID OF NEW YORK, INC.**, for the performance of certain maintenance and/or repairs to the floor(s) of the subject premises.

28.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **IMAGE BY J & K LLC**, entered into certain agreements with defendant, **MANSION OF MAINTENANCE INC.**, for the performance of certain maintenance and/or repairs to the floor(s) of the subject premises.

29.    That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **IMAGE BY J & K LLC**, performed certain maintenance and/or repairs to the floor(s) of the subject premises.

30.     That at all times hereinafter alleged, and upon information and belief, the defendant, **MANSION OF MAINTENANCE INC.,** conducted business within the State of New York.

31.     That at all times hereinafter alleged, and upon information and belief, the defendant, **MANSION OF MAINTENANCE INC.,** was and still is a domestic business corporation organized and existing under and by virtue of the laws of the State of New York.

32.     That at all times hereinafter alleged, and upon information and belief, the defendant, **MANSION OF MAINTENANCE INC.,** maintained a principal place of business in the County of Suffolk, State of New York.

33.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **MANSION OF MAINTENANCE INC.,** performed work at the subject premises.

34.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **MANSION OF MAINTENANCE INC.,** maintained the subject premises.

35.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **MANSION OF MAINTENANCE INC.,** controlled the subject premises.

36.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **MANSION OF MAINTENANCE INC.,** managed the subject premises.

37.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **MANSION OF MAINTENANCE INC.,** operated the subject premises.

38.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **MANSION OF MAINTENANCE INC.,** entered into certain agreements

with defendant, **RITE AID OF NEW YORK, INC.,** for the performance of certain maintenance and/or repairs to the floor(s) of the subject premises.

39.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **MANSION OF MAINTENANCE INC.,** entered into certain agreements with defendant, **IMAGE BY J & K LLC,** for the performance of certain maintenance and/or repairs to the floor(s) of the subject premises.

40.     That on or about or for some time prior to March 2, 2016, and upon information and belief, defendant, **MANSION OF MAINTENANCE INC.,** performed certain maintenance and/or repairs to the floor(s) of the subject premises.

41.     That on March 2, 2016, and at all times hereinafter mentioned, the plaintiff, **MIRIAM GALARZA,** was lawfully on the subject premises.

42.     That on March 2, 2016, the plaintiff, **MIRIAM GALARZA,** was lawfully on the subject premises when she was caused to slip and fall.

43.     That on March 2, 2016, the plaintiff, **MIRIAM GALARZA,** was caused to slip and fall and become injured due to a dangerous, hazardous and trap-like condition while properly and lawfully on the subject premises.

## AS AND FOR A FIRST CAUSE OF ACTION FOR NEGLIGENCE AGAINST DEFENDANT RITE AID OF NEW YORK, INC.

44.     The plaintiff repeats and realleges all the foregoing paragraphs with the same force and effect as though fully set forth herein.

45.     That at all times hereinafter mentioned, the defendant, **RITE AID OF NEW YORK, INC.,** had a duty to keep the subject premises maintained, in a state of good repair and free from all defects, traps, hazards and dangerous conditions constituting a danger and menace to persons lawfully and properly upon the subject premises.

46.    That at all times hereinafter mentioned, the defendant, **RITE AID OF NEW YORK, INC.**, had a duty to warn, barricade, and provide signage to others of any and all defects, traps, hazards and dangerous conditions constituting a danger and menace to persons lawfully and properly upon the subject premises.

47.    That on March 2, 2016, the plaintiff, **MIRIAM GALARZA**, was caused to slip and fall and be severely injured due to a dangerous, hazardous and trap-like condition while properly and lawfully at the aforementioned subject premises.

48.    That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, caused and created the dangerous, hazardous and trap-like condition at the aforementioned subject premises.

49.    That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, failed to properly correct the dangerous, hazardous and trap-like condition at the aforementioned subject premises.

50.    That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, failed to give proper warning and take the necessary precautions to protect persons lawfully upon the subject premises of the dangerous, hazardous, and trap-like conditions.

51.    That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, failed to properly inspect the subject premises and thus allowed the dangerous, hazardous and trap-like condition to exist.

52.    That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.**, failed to properly maintain the subject location and thus allowed the dangerous, hazardous and trap-like condition to exist.

53.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.,** failed to properly manage the subject location and thus allowed the dangerous, hazardous and trap-like condition to exist.

54.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.,** failed to properly oversee the subject premises and thus allowed the dangerous, hazardous and trap-like condition to exist.

55.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.,** allowed the dangerous, hazardous and trap-like condition to exist at the aforesaid location.

56.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **RITE AID OF NEW YORK, INC.,** knew or should have known about the dangerous, hazardous and trap-like condition, failed to correct, warn and/or take proper precautions to protect individuals lawfully and properly upon the subject location and, more particularly, the plaintiff herein.

57.     That the foregoing accident and resulting personal injuries to the plaintiff were caused solely and wholly by the negligence, carelessness, culpable acts of this defendant and/or the defendants jointly and severally through their agents, servants and/or employees.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT IMAGE BY J & K LLC

58.     The plaintiff repeats and realleges all the foregoing paragraphs with the same force and effect as though fully set forth herein.

59.     That at all times hereinafter mentioned, the defendant, **IMAGE BY J & K LLC,** had a duty to keep the subject premises maintained, in a state of good repair and free from all

defects, traps, hazards and dangerous conditions constituting a danger and menace to persons lawfully and properly upon the subject premises.

60.     That at all times hereinafter mentioned, the defendant, **IMAGE BY J & K LLC**, had a duty to warn, barricade, and provide signage to others of any and all defects, traps, hazards and dangerous conditions constituting a danger and menace to persons lawfully and properly upon the subject premises.

61.     That on March 2, 2016, the plaintiff, **MIRIAM GALARZA**, was caused to slip and fall and be severely injured due to a dangerous, hazardous and trap-like condition while properly and lawfully at the aforementioned subject premises.

62.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **IMAGE BY J & K LLC**, caused and created the dangerous, hazardous and trap-like condition at the aforementioned subject premises.

63.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **IMAGE BY J & K LLC**, failed to properly correct the dangerous, hazardous and trap-like condition at the aforementioned subject premises.

64.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **IMAGE BY J & K LLC**, failed to give proper warning and take the necessary precautions to protect persons lawfully upon the subject premises of the dangerous, hazardous, and trap-like conditions.

65.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **IMAGE BY J & K LLC**, failed to properly inspect the subject premises and thus allowed the dangerous, hazardous and trap-like condition to exist.

66.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **IMAGE BY J & K LLC**, failed to properly maintain the subject location and thus allowed the dangerous, hazardous and trap-like condition to exist.

67.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **IMAGE BY J & K LLC**, failed to properly manage the subject location and thus allowed the dangerous, hazardous and trap-like condition to exist.

68.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **IMAGE BY J & K LLC**, failed to properly oversee the subject premises and thus allowed the dangerous, hazardous and trap-like condition to exist.

69.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **IMAGE BY J & K LLC**, allowed the dangerous, hazardous and trap-like condition to exist at the aforesaid location.

70.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **IMAGE BY J & K LLC**, knew or should have known about the dangerous, hazardous and trap-like condition, failed to correct, warn and/or take proper precautions to protect individuals lawfully and properly upon the subject location and, more particularly, the plaintiff herein.

71.     That the foregoing accident and resulting personal injuries to the plaintiff were caused solely and wholly by the negligence, carelessness, culpable acts of this defendant and/or the defendants jointly and severally through their agents, servants and/or employees.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST
## DEFENDANT MANSION OF MAINTENANCE INC.

72.     The plaintiff repeats and realleges all the foregoing paragraphs with the same force and effect as though fully set forth herein.

73.     That at all times hereinafter mentioned, the defendant, **MANSION OF MAINTENANCE INC.**, had a duty to keep the subject premises maintained, in a state of good repair and free from all defects, traps, hazards and dangerous conditions constituting a danger and menace to persons lawfully and properly upon the subject premises.

74.     That at all times hereinafter mentioned, the defendant, **MANSION OF MAINTENANCE INC.**, had a duty to warn, barricade, and provide signage to others of any and all defects, traps, hazards and dangerous conditions constituting a danger and menace to persons lawfully and properly upon the subject premises.

75.     That on March 2, 2016, the plaintiff, **MIRIAM GALARZA**, was caused to slip and fall and be severely injured due to a dangerous, hazardous and trap-like condition while properly and lawfully at the aforementioned subject premises.

76.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **MANSION OF MAINTENANCE INC.**, caused and created the dangerous, hazardous and trap-like condition at the aforementioned subject premises.

77.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **MANSION OF MAINTENANCE INC.**, failed to properly correct the dangerous, hazardous and trap-like condition at the aforementioned subject premises.

78.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **MANSION OF MAINTENANCE INC.**, failed to give proper warning and take the necessary precautions to protect persons lawfully upon the subject premises of the dangerous, hazardous, and trap-like conditions.

79.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **MANSION OF MAINTENANCE INC.**, failed to properly inspect the subject premises and thus allowed the dangerous, hazardous and trap-like condition to exist.

80.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **MANSION OF MAINTENANCE INC.**, failed to properly maintain the subject location and thus allowed the dangerous, hazardous and trap-like condition to exist.

81.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **MANSION OF MAINTENANCE INC.**, failed to properly manage the subject location and thus allowed the dangerous, hazardous and trap-like condition to exist.

82.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **MANSION OF MAINTENANCE INC.**, failed to properly oversee the subject premises and thus allowed the dangerous, hazardous and trap-like condition to exist.

83.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **MANSION OF MAINTENANCE INC.**, allowed the dangerous, hazardous and trap-like condition to exist at the aforesaid location.

84.     That at all times hereinafter mentioned, and upon information and belief, the defendant, **MANSION OF MAINTENANCE INC.**, knew or should have known about the dangerous, hazardous and trap-like condition, failed to correct, warn and/or take proper precautions to protect individuals lawfully and properly upon the subject location and, more particularly, the plaintiff herein.

85.     That the foregoing accident and resulting personal injuries to the plaintiff were caused solely and wholly by the negligence, carelessness, culpable acts of this defendant and/or the defendants jointly and severally through their agents, servants and/or employees

## AS TO ALL DEFENDANTS

86.     The plaintiff repeats and realleges all of the foregoing paragraphs with the same full force and effect as though fully stated herein.

87.     That as a result of the negligence, carelessness, and culpable acts of the defendants and the accident described above, plaintiff, **MIRIAM GALARZA**, was caused to sustain severe personal injuries and was rendered sick, sore, lame and disabled and did incur and will continue to incur medical expenses.

88.     That as a result of the negligence of the defendants, the plaintiff, **MIRIAM GALARZA**, has been rendered incapacitated and unable to fulfill her normal activities and profession.

89.     That one or more of the exceptions of CPLR Article 16 apply to the facts and circumstances of this action.

90.     That as a result of the incident and negligence of the defendants and their agents, servants and/or employees, plaintiff, **MIRIAM GALARZA**, became sick, sore, lame and disabled, and has been damaged in a sum in excess of the jurisdictional limits of all lower courts existing in the State of New York.

91.     That as a result of the incidence and negligence of the defendants and their agents, servants and/or employees, plaintiff, **MIRIAM GALARZA**, experienced pain and suffering, was denied quality and enjoyment of life and sustained economic damages in a sum in excess of the jurisdictional limits of all lower courts existing in the State of New York.

**WHEREFORE**, the plaintiff, **MIRIAM GALARZA**, demands judgment against the defendants in an amount that exceeds the jurisdictional limits of the lower courts, all together with the costs and disbursements of this action.

Dated: New York, New York
     January 16, 2017

Yours, etc.

_____
ALBERT K. KIM
LAW OFFICES OF
MICHAEL S. LAMONSOFF, PLLC
Attorneys for Plaintiff
MIRIAM GALARZA
Financial Square at 32 Old Slip - 8th FL
New York, New York 10005
(212) 962-1020
File No.: 24893

**ATTORNEY'S VERIFICATION**

**ALBERT K. KIM,** an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

I am an attorney at **LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC,** attorneys of record for Plaintiff, **MIRIAM GALARZA.** I have read the annexed **AMENDED COMPLAINT** and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files.

This verification is made by me because Plaintiff is not presently in the county wherein I maintain my offices.

DATED:    New York, New York
          January 16, 2017

_____
ALBERT K. KIM

Case ID: 190500100

Index No.: 505611/2016E
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

MIRIAM GALARZA,

Plaintiff,

-against-

RITE AID OF NEW YORK, INC., IMAGE BY J & K LLC, and MANSION OF
MAINTENANCE INC.,

Defendants.

## SUPPLEMENTAL SUMMONS & VERIFIED AMENDED COMPLAINT

**LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC**
*Attorneys for Plaintiff*
**Financial Square at 32 Old Slip – 8th Floor**
**New York, New York 10005**
**(212) 962-1020**

Pursuant to 22NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of
the State of New York, certifies that, upon information and belief and reasonable inquiry, the
contentions contained in the annexed document are not frivolous.

ALBERT K. KIM

# EXHIBIT "D"

Case ID: 190500100

# FLOOR CARE
# PREVENTATIVE SERVICE AGREEMENT

This agreement (the "Agreement") is entered into as of the 1st day of **January, 2016** by and between **Image by J & K, LLC** a Corporation with its principal office located at **401 E. Pratt Street, STE 423, Baltimore, MD 21202** (hereinafter "Contractor") and **Rite Aid HDQTRS Corp. and/ or its affiliated companies** a Delaware Corporation, whose principal office is located at **30 Hunter Lane, P.O. Box 3165, Camp Hill, PA 17011** (hereinafter "Rite Aid") whereby the parties agree as follows: Contractor agrees to provide the services as described herein in consideration for compensation as described in this Agreement and attached Exhibit A, Exhibit B, Exhibit C, Exhibit D and Exhibit E.

**TERM:** The term of this Agreement shall commence on **January 1, 2016** and shall be for a period of two (2) years ending **December 31, 2017** and will continue month to month thereafter until otherwise extended, terminated or confirmed as expired in writing from Rite Aid. This Agreement may be extended for two (2) additional one (1) year terms upon mutual written agreement of both parties. This Agreement shall supersede any and all other agreements in effect between the parties, for the services identified herein.

**TERMINATION:** Notwithstanding the foregoing, Rite Aid reserves the right to terminate this Agreement upon thirty (30) days written notice anytime during the term, except that cancellation for just cause or upon closing of a store(s) shall be immediate. Upon early termination of this Agreement, for any reason, Contractor shall reconcile all billings as of the date of contract interruption and issue a revised billing based on Services or other work actually performed as of that date. Other than payment for services rendered prior to termination, Rite Aid shall have no further obligation to Contractor hereunder.

**ENTIRE AGREEMENT:** This document and the terms and conditions herein comprise the entire agreement between Rite Aid and Contractor. No other terms, conditions, agreements or understandings either written or oral will supersede nor negate the terms herein unless agreed to in writing, executed by both parties and made an addendum to this Agreement. In the event of any conflict of provisions between this Agreement and any exhibits attached hereto, the language of this Agreement shall control.

**INTENT:** The intent of this Agreement is to perform **Floor Care** Services ("Services") at the Rite Aid locations listed in Exhibit A (the "Locations") for optimum condition by establishing service frequency, minimum inspection and routine maintenance requirements, in accordance with the following specifications, terms and conditions. The Services shall be performed in a good and workmanlike manner in compliance with all applicable federal, state and local codes, regulations, ordinances and statutes ("Applicable Laws").

**CONFIDENTIALITY:** "Proprietary Information" means all trade secrets or confidential or proprietary information disclosed by Rite Aid to Contractor or its Representatives, regardless of whether such information has been designated as confidential or proprietary information. Proprietary Information also means information (the form of which includes, but is not limited to, hardcopy, electronic, oral, facsimile, graphic, demonstrative, machine recognizable or sample form) that relates to Rite Aid's past, present and future research, development, business activities, products, services, client lists, panelists, panelist lists, pricing and related pricing models, financial information (audited and non-audited), and technical or proprietary knowledge, and information identified by any notes, analyses, compilations, studies, interpretations, memoranda or other documents prepared by or for Contractor or its Representatives that contain, reflect or are based upon, in whole or in part, Proprietary Information furnished to Contractor, including its Representatives, pursuant to this Agreement.

"Personally Identifiable Information" means identifiable information about an individual or information that might reasonably allow identification of an individual ("PII").

Case ID: 190500100

Contractor agrees not to disclose any Proprietary Information, PII, or the terms and/or conditions of this Agreement to any third party except to its employees directly related in fulfilling the terms of the Agreement. These employees agree not to disclose to any other third parties. Except as otherwise expressly provided herein, Contractor agrees to maintain absolute confidentiality concerning this Agreement, Proprietary Information, and/or PII save and except as otherwise ordered by a court of competent jurisdiction.

Contractor acknowledges that Rite Aid will be irreparably harmed should it or its employees disclose any of terms and/or conditions of this Agreement, Proprietary Information, and/or PII to any unauthorized third party without Rite Aid's prior written permission. In the event of any unauthorized disclosure, Contractor acknowledges and agrees that Rite Aid can go to any court of competent jurisdiction and obtain a restraining order and/or injunction immediately prohibiting such disclosure. This obligations does not apply if the information is already known to the public generally without Contractor's knowledge, was known to Contractor at the time of this contract or was disclosed to the Contractor by a third party having the right to disclose such information. This Agreement will be governed in accordance with the laws of the Commonwealth of Pennsylvania, notwithstanding its conflicts of law provisions.

**PROTECTED HEALTH INFORMATION ("PHI"):** Pursuant to the Health Insurance Portability and Accountability Act of 1996, Rite Aid, along with all other health care providers, is required to take some extra precautions about how patients' protected health information is used and disclosed. To comply with that regulation, Rite Aid requires Contractor to review and comply with the following provisions-

The purpose of this confidentiality agreement is to establish Contractor's agreement to maintain the confidentiality and privacy of any Protected Health Information ("PHI") that Contractor, its employees, agents, or subcontractors may see or have unintended access to in the ordinary course of business.

Rite Aid and Contractor understand that Contractor, in the agreed upon sale, exchange, or other transfer of goods and/or services, may see, hear, or otherwise have unintended access to PHI maintained by Rite Aid. Such unintended access to PHI may constitute a disclosure of PHI that is incidental to Rite Aid's allowable use and disclosure of PHI under the federal HIPAA Privacy Regulation.

Contractor agrees to keep confidential any Protected Health Information that to which Contractor, its employees, agents, or subcontractors may see or to which Contractor, its employees, agents, or subcontractors may have unintended access to in the ordinary course of business. Contractor further agrees to instruct its employees, agents, or subcontractors in the necessity of maintaining the confidentiality of PHI.

Contractor further agrees to immediately notify Rite Aid in writing of any disclosure of PHI that may be made by or to Contractor, its employees, agents, or subcontractors.

Rite Aid may terminate any and all agreements with Contractor at any time if it determines that Contractor has violated any of the material terms of this PHI portion of the Agreement.

## I. GENERAL REQUIREMENTS

**1. CONTRACTOR AVAILABILITY:** Contractor must be readily available twenty-four (24) hours a day, three hundred sixty-five (365) days per year. Same day service is required on emergency calls placed before 12:00 noon in the time zone in which the Contractor's office is located. Contractor shall make every reasonable attempt to respond to emergencies within two (2) hours after receipt of service request. Calls shall be placed to the following numbers:

PHONE: 434-401-9106      CONTACT: Eric Jewett
AFTER HOURS: 888-667-6929      CONTACT: Blake Voyles /Eric Jewett

**2. COMPETITIVE BID:** Rite Aid reserves the right to competitive bid product/services not covered under this Agreement.

Case ID: 190500100

**3. COMPLIANCE WITH LAWS:** Contractor, its subcontractors and their respective employees, agents and anyone performing work here under shall comply with all current federal, state and local laws and regulations and any subsequent applicable laws and regulations implemented during the term of this Agreement. This provision specifically includes Department of Labor, Occupational Safety and Health Administration, and Environmental Protection Agency laws, regulations, or other provisions. Contractor agrees to utilize only properly certified technicians and equipment in the performance of Services under this Agreement and provide proof of certification upon request.

**4. PERMITS AND INSPECTIONS/CODE COMPLIANCE:** Contractor shall secure any and all permits and/or inspections required by all Applicable Laws. Certificates of inspection shall be furnished to Rite Aid where permits are required. All work performed under this Agreement must be in compliance with all Applicable Laws.

**5. IMMIGRATION COMPLIANCE:** All Contractor personnel or agents must be United States citizens, or otherwise be legally authorized to work in the United States. It is required at least one member of the crew be able to converse in the English language.

**6. CHOICE of LAW; JURISDICTION; VENUE:** This Agreement shall be construed and enforced under and in accordance with the laws of the Commonwealth of Pennsylvania. Any and all disputes or claims relative to this Agreement shall be negotiated, tried, determined, or otherwise handled and disposed of only in the appropriate state court of the Commonwealth of Pennsylvania. Contractor hereby consents to the personal jurisdiction of such court over it in such matter.

**7. ASSIGNMENT:** Neither Rite Aid nor Contractor may assign or transfer their interest in this Agreement without the written consent of the other, which consent shall not be unreasonably withheld or delayed.

**8. AUDIT:** Contractor shall keep books of account related to the Services provided under this Agreement and Rite Aid shall have the right, with at least seven (7) day's prior written notice, to examine and audit such books and records.

**9. BREACH OF AGREEMENT:** The foregoing notwithstanding, if either party shall breach any provision of this Agreement, then the non-breaching party, after giving the breaching party written notice of such breach and ten (10) days from receipt of said notice to cure same, shall be entitled to immediately terminate this Agreement by written notice.

**10. NON-CURABLE DEFAULT:** Either party may elect to terminate this Agreement immediately for just cause upon delivery of written notice to the other in the event that the other: (i) becomes unable or fails to pay its debts (including any amount owed hereunder) as they become due; (ii) files or has filed against it any petition seeking relief under any bankruptcy, reorganization, liquidation or similar law;(iii) makes a general assignment for the benefit of its creditors or (iv) fails to perform as indicated in this Agreement. In any such case, such termination shall be effective on the termination date specified in such notice.

**11. RECOVERY OF PRODUCT:** Upon any termination or expiration of this Agreement, Contractor shall have the right to recover any and all product or materials in the possession of Rite Aid within thirty (30) days and if not so recovered, shall be deemed abandoned and may be disposed of as Rite Aid deems fit, in its sole discretion.

**12. RESTITUTION:** Contractor shall be solely and fully responsible for all actions (negligent, intentional, criminal or otherwise) of its employees, agents and subcontractors wherein, on or about any Rite Aid Locations. Contractor shall reimburse Rite Aid for all loss or damage to property of Rite Aid or injury to persons caused by Contractor, its employees, agents or subcontractors resulting from,

Case ID: 190500100

arising out of, or connected with the Services. Reimbursement, credit invoice or credit memo shall be at full replacement value; however, stolen merchandise shall be reimbursed at the retail price then in effect.

**13.   REPRESENTATION:** Contractor and Rite Aid hereto represent that each has full power and authority to enter into this Agreement and that this Agreement is binding upon each of them and enforceable in accordance with its terms.

**14.  NOTICES:** Any notice to be given or to be served upon either party hereto in connection with this Agreement shall be in writing and shall be deemed to have been given when a letter containing such notice, properly addressed, Certified Mail, Return Receipt, with postage prepaid, is deposited with the United States Postal Service.  Such notices shall be sent to the addresses set forth at the beginning of this Agreement and any such notice to Rite Aid shall be sent attention of: Contract Administrator – Floor Care, Retail Facilities Department.

## II.  INDEMNIFICATION AND INSURANCE

**1.   INDEMNIFICATION:** Contractor acknowledges and agrees to indemnify, defend and hold Rite Aid harmless from and against any and all claims, losses, liability, damages, fines, sanctions and expenses, including reasonable attorney's fees arising or resulting, directly or indirectly in connection with any:

   a.   intentional or negligent act or omission of Contractor or Contractor's agents or employees with respect to the performance of its obligations under this Agreement; or
   b.   breach of any law or regulation, representation, warranty or other obligation of Contractor under this Agreement; or
   c.   violation of any regulation or law by Contractor, its subcontractor(s) or their respective employees or agents.

Contractor shall further indemnify, defend and hold Rite Aid harmless from any and all liens and other encumbrances against the Locations on account of debts or claims alleged to be due from Contractor to any person, including any subcontractor employed by or under him, or to any supplier.

Rite Aid reserves the right to select and retain counsel at Contractor's expense to defend Rite Aid in any such action, as necessary under these provisions; or until Contractor accepts tender, defense, and communicates with Rite Aid, with no conflict in representing Rite Aid's interests.

For any matter that Contractor accepts on Rite Aid's behalf, Contractor must notify the Rite Aid risk management team and include Rite Aid on all responses, resolutions and releases.

The foregoing indemnity provisions shall survive the termination of this Agreement.

**2.  INSURANCE:** Contractor represents that it carries insurance with a reputable insurance company(ies) licensed to underwrite in states where the Services are being performed and providing for coverage as follows:

**(a) Comprehensive General Liability:** $5,000,000 single limit liability coverage, and including personal injury perils, broad form contractual liability, broad form property damage and extended bodily injury; and

**(b) Automobile:** $1,000,000 combined single limits for owned and non-owned motor vehicle liability coverage; and

**(c) Worker's Compensation:** Statutory coverage.

Case ID: 190500100

**(d) Theft:** $10,000 for any one theft.

**(e) Additional Insured and No Cancellation Clause:** The insurance provided shall name Rite Aid HDQTRS Corp. and/or its Affiliated Companies as an additional insured and shall contain a clause that it will not be canceled, materially modified or otherwise altered without thirty (30) days' prior written notice to Rite Aid. Contractor agrees:

> **1. Insurance:** To keep such insurance in force during the full term of this Agreement, and
> **2. Certificate of Insurance:** To provide a current Certificate of Insurance to Rite Aid evidencing such coverage during the full term of this Agreement.

Before commencing performance under this Agreement, Contractor shall provide Rite Aid with certificates of insurance reflecting the above coverages.

## III. INVOICING INSTRUCTIONS

1. **FEES:** For performing the Services, Rite Aid shall pay Contractor according to Exhibit C.

2. **INVOICING:** <u>At a minimum of on a monthly basis</u>, Contractor shall submit a separate spreadsheet invoice for services rendered along with each invoice, for each Location according to Exhibit A and/or respective work orders. Contractor will provide a service call detail summary for each location. Contractor shall submit invoicing within thirty (30) days of Services being rendered. All invoices including those for extra work and out of scope services must be submitted according to attached Exhibit D.

   3. **PAYMENT:** Payment shall be issued thirty (30) days from receipt of the above invoices and supporting documents as described above.

   4. **PROCUREMENT CARD:** Coincident with Contractor's capabilities, Rite Aid may pay properly submitted invoices within thirty (30) days after receipt with a corporate purchasing card for payment. Supplier agrees to accept any such card. Rite Aid may withhold any amounts which are disputed in good faith or may deduct any amounts for charges, costs, expenses or losses actually incurred as a result of defects in the work or Services; late delivery; or any other noncompliance with applicable schedules, exhibits, attachments, drawings, data sheets or specifications. Rite Aid shall use good faith efforts to procure compliance with its payment obligations under this Agreement. Rite Aid shall have a right of setoff against any amounts due under this Agreement, for all amounts due Rite Aid from Contractor regardless of the source of the obligation.

5. **CESSATION OF SERVICES FOR CLOSED STORES:** Upon closure of a Location during the contract term, all accumulated monthly billings to Rite Aid will be compared to the cost of all actual services or other additional work satisfactorily performed and documented for that Location to date of closing. For the cost of said services, Contractor will invoice Rite Aid and payment will be due within thirty (30) days from receipt of invoices. For any excess of accumulated billings over the actual cost of said Services, Contractor will credit Rite Aid.

## IV. SPECIFIC PROVISIONS

1. **SERVICE DETAILS**

   **(a) Frequency:** Frequency of services performed shall be according to Exhibit B. Rite Aid reserves the right to change service frequencies at any time during the term of this Agreement, upon twenty-four (24) hours written notice.

**(b) Scope:** Scope of work must be performed according to attached Exhibit B, unless otherwise previously approved by a designated Rite Aid corporate office representative.

**(c) Non-Scheduled Services:** Contractor agrees to obtain written authorization from the Retail Facilities Department to perform any non-scheduled or additional services. Contractor agrees to waive payment if said authorization is not obtained prior to the commencement of the aforementioned services. A sample copy of a work order is attached at Exhibit D-6.

**(d) Quality Control Inspections:** Rite Aid expects Contractor to conduct regular quality control inspections at its own frequency or the frequency designated in attached exhibits, to match the type of service being provided. Reports from Quality Control inspections shall be made available to Rite Aid upon request.

## 2. GENERAL SERVICE CONDITIONS

**(a) Safety:** Contractor shall maintain adequate procedures during and immediately following the performance of the Services to ensure: the safe and tenantable condition of the locations; and the safety of Rite Aid, its employees, invitees, customers and agents (including the agents and employees of Contractor). Contractor shall provide proper and periodic training consistent with industry standards to all Contractor employees and subcontractors, as necessary to deliver safe and satisfactory services to Rite Aid.

**(b) Identification:** Contractor employees and subcontractors shall wear identification with the individual and company name when performing Services.

**(c) Log Book:** Contractor is highly recommended to use the designated Vendor Log Book present at each Location. Contractor should sign legibly and log in and out of the book with the appropriate times.

**(c) Refusal:** Rite Aid reserves the right to refuse services by any subcontractor at its sole discretion and request Contractor to replace said subcontractor with another party. Any refusals will be done with thirty (30) days of written notice.

## V. NEW LOCATION(s):

1. Location(s) may be added and/or deleted to Exhibit A on an as-needed basis.
2. New locations added during the term of this Agreement shall be treated the same as existing locations and expire upon the aforementioned expiration date.

Case ID: 190500100

IN WITNESS WHEREOF, Contractor and Rite Aid have caused this Agreement to be executed as of the above date.

**IMAGE BY J & K, LLC**

SIGNATURE

PRINT NAME

TITLE

WITNESS

**RITE AID:**
**RITE AID HDQTRS CORP.**

SIGNATURE

PRINT NAME  Robert D. Fazakerley

TITLE  VP Corporate & Retail Facilities

WITNESS  Brandy Kinshaw

Page 7 of 7

Case ID: 190500100

# Exhibit A

## Locations / Pricing

EXHIBIT A - 7/1/2016

| ID | Type | | | | Address | City | State | Zip | | | | | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10253 | Image | 4 | 47071 | 47033 | 145 BAY STREET | STATEN ISLAND | NY | 10301310401 | 51 | | 51 | $93.00 | $4,743.00 | 3 | $416.00 | $1,248.00 | | $0.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $7,223.00 |
| 10536 | Image | 4 | 47033 | 43-48 AMBOY ROAD | STATEN ISLAND | NY | 10313310301 | 51 | | 51 | $93.00 | $4,743.00 | 3 | $416.00 | $1,248.00 | | $0.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $7,039.00 | | |
| 2144 | Image | 4 | 47033 | 1271 RICHMOND AVENUE | STATEN ISLAND | NY | 10314310401 | 100 | | 100 | $30.00 | $5,579.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $11,475.00 | |
| 1162 | Image | 4 | 47071 | 123 AMSTERDAM STREET | HEARTBEACH | NJ | 07601310303 | 100 | | 100 | $84.00 | $4,727.00 | 3 | $407.00 | $974.00 | | $250.00 | 1 | $184.00 | $3,395.00 | 0 | $18.00 | $12,345.00 | |
| 171 | Image | 4 | 47021 | 779 ANDERSON AVENUE | CLIFFSIDE PARK | NJ | 07010310101 | 51 | | 51 | $93.00 | $4,743.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $7,039.00 | |
| 844 | Image | 4 | 47601 | 65 OUTWATER LANE STE 3 | OAKFIELD | NJ | 07604310409 | 51 | | 51 | $93.00 | $4,743.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $7,039.00 | |
| 153 | Image | 4 | 47601 | 151 BOULEVARD | HASBROUCK HEIGHTS | NJ | 07604310401 | 51 | | 51 | $93.00 | $4,743.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $7,039.00 | |
| 1116 | Image | 4 | 47601 | 18 STATE ROAD | BOGOTA | NJ | 07603310501 | 51 | | 51 | $93.00 | $4,743.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $850.00 | 0 | $18.00 | $7,205.00 | |
| 1316 | Image | 4 | 47601 | 78 MAIN AVENUE | PASSAIC | NJ | 07055310455 | 100 | | 100 | $30.00 | $5,579.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $700.00 | 0 | $18.00 | $6,875.00 | |
| 1313 | Image | 4 | 47601 | 135 LAFAYETTE AVENUE | HAWTHORNE | NJ | 07506310555 | 51 | | 51 | $93.00 | $4,743.00 | 3 | $416.00 | $1,248.00 | | $180.00 | 1 | $180.00 | $570.00 | 0 | $18.00 | $6,871.00 | |
| 1913 | Image | 4 | 47601 | 103 FRANKLIN AVENUE | NUTLEY | NJ | 07110310455 | 51 | | 51 | $93.00 | $4,601.00 | 3 | $416.00 | $1,248.00 | | $170.00 | 1 | $170.00 | $850.00 | 0 | $18.00 | $6,761.00 | |
| 1796 | Image | 4 | 47601 | RICHFIELD SHOPPING CENTER | CLIFTON | NJ | 07011310143 | 51 | | 51 | $91.00 | $4,641.00 | 3 | $416.00 | $1,248.00 | | $100.00 | 1 | $100.00 | $600.00 | 0 | $18.00 | $6,649.00 | |
| 1976 | Image | 4 | 47601 | 451 HALEDON AVENUE | HALEDON | NJ | 07508310555 | 51 | | 51 | $93.00 | $4,743.00 | 3 | $415.00 | $1,513.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $7,254.00 | |
| 1488 | Image | 4 | 47601 | 53-57 NORTH STREET | PATERSON | NJ | 07522310171 | 51 | | 51 | $93.00 | $4,743.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $7,039.00 | |
| 1493 | Image | 4 | 47601 | 114-136 BROADWAY | PASSAIC | NJ | 07055310901 | 51 | | 51 | $29.00 | $4,743.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $7,039.00 | |
| 791 | Image | 4 | 47601 | 141 VALLEY BRIDGE AVENUE | LYNDHURST | NJ | 07071310331 | 100 | | 100 | $30.00 | $5,579.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $11,475.00 | |
| 1339 | Image | 4 | 47601 | 108 PARK AVENUE | RUTHERFORD | NJ | 07070310311 | 100 | | 100 | $93.00 | $5,579.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $11,475.00 | |
| 1543 | Image | 4 | 47601 | 120 WILLOW AVE C | MOONACHIE | NJ | 07074310311 | 100 | | 100 | $30.00 | $5,579.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $11,475.00 | |
| 1711 | Image | 4 | 47601 | 451 CENTRAL AVENUE | JERSEY CITY | NJ | 07307310309 | 100 | | 100 | $93.00 | $5,579.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $11,475.00 | |
| 1746 | Image | 4 | 47601 | 455 LEXINGTON AVENUE | CLIFTON | NJ | 07011310501 | 100 | | 100 | $30.00 | $5,579.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $11,475.00 | |
| 1337 | Image | 4 | 47601 | 1333 5TH STREET | HAVERSTRACK | NJ | 07509310153 | 100 | | 100 | $30.00 | $5,579.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $11,475.00 | |
| 1337 | Image | 4 | 47601 | 1332 SHIPYARD LAKE 83-44 | HOBOKEN | NJ | 07030310501 | 100 | | 100 | $93.00 | $5,579.00 | 3 | $416.00 | $1,344.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $11,475.00 | |
| 7847 | Image | 4 | 47601 | 452 CHAMBERLAIN AVENUE | PATERSON | NJ | 07523310909 | 100 | | 100 | $93.00 | $5,579.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $11,475.00 | |
| 1461 | Image | 4 | 47601 | 2575-41 KENNEDY BOULEVARD | JERSEY CITY | NJ | 07306309051 | 151 | | 151 | $93.00 | $14,410.00 | 3 | $416.00 | $1,248.00 | | $184.00 | 1 | $184.00 | $844.00 | 0 | $18.00 | $17,711.00 | |

$772,084.00

Case ID: 190500100

# Exhibit B-1

## Floor Care Mini Scrub Scope

**EXHIBIT B**

**FLOOR CARE SERVICES SCOPE OF WORK**

**Overview:**   This document outlines the expectations of what and how Rite Aid external contractors must perform floor care services. Floor contractors must supply all equipment, materials and supplies necessary to provide the contracted floor services, including buffers, scrubbers, scrapers, mops, buckets, wet floor signs, vacuums and chemicals.  All floor care services are to be performed after store business hours.   For 24 hour stores, services must be performed between the hours of 11:00 PM and 5:00 AM.  The length of time to perform service presented in this document are based on a 12,000 (average across all divisions) square foot model.  Backrooms, pharmacies, lunchrooms, and carpeted areas are not included in the Basic Services.  All crews should enter an IVR at the start of every service with the MOD and IVR out with the MOD upon completion.

<u>**Basic Services**</u>
Basic service may be scheduled weekly, bi-weekly, or more frequently.

This service is to be performed by an auto-scrubber machine; mop and bucket service may be allowed in rare exceptions or on an emergency basis (machine broken) only.  Performed properly, the basic service should take approximately 2.5 man hours to complete.

The following tasks are considered to be basic services that a contractor performs:
- Basic service should be performed with two (2) crew members.
- Remove gum and stickers from the floor; pick up all area rugs and store out of the way. Replace when finished.
- Dust mop the entire sales floor including areas behind the registers, counters, photo areas and bathrooms regardless of location within the store. The broom should be used to clean the bathroom floors.
- Auto scrub and restore all respective floor areas.  When using an auto scrubber, damp mop corners, edges and squeegee the streaks.
- High-speed buff entire floor area, using spray buff as per manufacturer recommendations.
- Re-sweep or dust mop floor areas.
- The service ticket should remain with the store manager.

<u>**Mini Scrub**</u>
9x/yr. program, performed every month except December, February and the month of the annual strip; or as otherwise modified and conveyed to Contractor in advance.

The mini scrub is provided 9x/year to maintain the floor's finish at acceptable levels by performing a scrub and recoat of High Traffic Areas and spray buff the entire floor.  The mini scrub takes approximately 3.5 hours to complete.  The manager designates 1/3 of the balance of the sales floor to receive service, so that the entire store has received a scrub on a quarterly basis. (Rest of sales floor is cleaned and buffed, as per Other Areas, below).

    **Mini Scrub - High Traffic Areas**

    High traffic areas include cash wrap, "raceway," front of store, front of pharmacy, and the back of the store.

Case ID: 190500100

- Mini scrub service should be performed with a minimum of two (2) crew members.
- Remove gum and stickers from the floor; pick up all area rugs and store out of the way.  Replace when finished.
- Dust-mop all respective floor areas.
- Apply restoring product using manufacturer recommended ratio of ounces per gallon of cool water, to tile floor.
- Scrub floor using a buffer or an auto-scrubber with a green or blue pad, removing embedded dirt and soils.  When using an auto scrubber, damp mop corners, edges and squeegee the streaks.
- Rinse floor with cool water.
- Allow to dry.
- Apply two (2) coats of floor finish using a rayon mop, and allow drying between coats.
- Clean any finish residue from covebase, kickplates, fixtures or non-floor surfaces.
- Buff the floors to a high shine with a high speed buffer.
- The service ticket should remain with the store manager.

**Mini Scrub - Other Areas**

Scrub services in other areas of the store, remainder of the sales floor (including manager's office), restrooms, lunchrooms with VCT, BBT, or LVT flooring, behind service counters, and non-carpeted pharmacy areas should be performed as follows:

- Scrub and recoat high traffic areas (listed above) and spray buff the entire floor.
- Remove gum and stickers from the floor; pick up all area rugs and store out of the way.  Replace when finished.
- Dust mop all respective floor areas.
- Apply restoring product using manufacturer recommended ratio of ounces per gallon of cool water.
- Use an auto-scrubber with a red pad to clean the floor.
- When using an auto scrubber, damp mop corners, edges and squeegee the streaks.
- Allow to dry.
- Spray buff respective floor areas using a high-speed buffer, using a mix according to manufacturer specifications.
- Re-sweep or dust mop floor areas.
- The service ticket should remain with the store manager.

**Note:**  Propane buffers are the required equipment, unless otherwise prohibited or locations are pre-approved for battery operated units.  Propane buffers should never be used during business hours, except as noted for 24-hour stores.
CONTRACTOR MUST BE SURE TO BLEND EDGES OF RECOATED AREAS WITH THE REST OF THE STORE.

Case ID: 190500100

**Strip**
Annual Program (1 x yr)

Strip all VCT, BBT, or LVT floor surfaces (except back rooms) of all old finish, remove stains and apply all new finish to keep floor clean and shiny throughout the year.  Strip and Finish application is a two (2) night project; therefore, it is expected:

- Strip service should be performed with a minimum of four (4) crew members, which can be reduced to (2) after the strip is complete.  The remaining two (2) members should apply the finish and perform the buffing service.
- Remove gum and stickers from the floor; pick up all area rugs and store out of the way. Replace when finished.
- Dust mop all respective floor areas.
- Strip all respective floor areas with authorized chemical per manufacturer recommendations.
- Use scraper to remove residue/old finish from fixture edges, for a clean consistent appearance.
- Spot treat stains according to stain removal protocol (attached).
- Apply finish on First Night as follows-
  - Apply four (4) coats of finish to all tile surfaces.
  - Apply five (5) coats of finish to all tile surfaces located in high traffic areas.
- Apply finish on Second Night ("top coat" application) as follows-
  - Dust mop all respective floor areas.
  - Lightly scrub all floor areas to prepare for application of top coats of finish.
  - Apply two (2) – three (3) coats of finish to bring all tile surfaces to a total application of seven (7) coats of finish.
- Allow to dry.
- Clean any finish residue from covebase, kickplates, fixtures or non-floor surfaces.
- Buff the floors to a high shine with a high speed buffer.
- Re-sweep or dust mop respective floors.
- The service ticket should remain with the store manager.

Case ID: 190500100

**Carpet Cleaning**

**Step 1: Vacuum**
Commercial Approach: Using a commercially appropriate upright or backpack vacuum that incorporates brushing or beating action, all carpet surfaces shall be vacuumed and left clean of all dust, and loose and imbedded dirt. If necessary, spot clean using a dry cleaner or spot remover to leave the carpet clean of spots and stains. Gum and stickers should be removed with appropriate "freeze spray" technology or other non-damaging chemical application.  Areas not accessible with a beating type vacuum cleaner will be cleaned with the wand attachment or separate portable vacuum. Upon completion, carpet must be free of dirt, dust, stains and embedded debris.

**Step 2:  Extraction Methods** (Please use A <u>or</u> B)
Moveable furniture (including but not limited to waiting area chairs and tables) shall be moved before cleaning and shall be moved back into place after the carpet is cleaned, placing all furniture on moisture barriers if carpet is damp.

**A.   Hot Extraction Method**

Use a hot extraction method safe for all carpets, and that is quick-drying. Immediately before cleaning, vacuum, spot clean and pre-treat heavily soiled areas. Clean all carpeted surfaces with the extraction head, changing water with the frequency necessary to prevent dirty water residue on the carpet surfaces.  Carpet should not show streaks or lines from where the extraction head was applied. Following extraction, vacuum any additional debris left on the carpet, so that all carpet surface is fully clean.

**B.   Dry Cleaning Method**

Use a dry chemical method safe for all carpets.  Immediately before cleaning, vacuum, spot clean and pre-treat heavily soiled areas. Apply appropriate dry chemical to the carpet surfaces and wait the manufacturer's recommended time to allow product to infiltrate.  Using the extraction head of the vacuum, clean all carpeted surfaces to remove the chemical, dirt and by-products.  The carpet should not be left with a sticky residue.  Following extraction, vacuum any additional debris left on the carpet, so that all carpet surface is fully clean.

Case ID: 190500100

**SIMULATED WOOD FLOORING SURFACE**

<u>**Simulated Wood Flooring Surface**</u>

In all Rite Aid locations containing the simulated wood flooring, the following scope of work should be utilized in the <u>wood floor area only</u>:

**Basic Service**
- Dry mop to remove any surface dirt or residue, including gum or stickers.
- Wet mop with clean cold water.

**Mini-Scrub Service**
- Dry mop to remove any surface dirt or residue.
- Clean surface area using non-residual degreaser with a wet mop and clean water, or an auto-scrubber with a white pad only.
- Apply one (1) coat of finish.  DO NOT BURNISH.

**Strip**
- Dry mop to remove any surface dirt or residue.
- Clean surface area using non-residual degreaser with a wet mop and clean water, or an autoscrubber with a white pad only.
- Apply three (3) coats of finish.  DO NOT BURNISH.

Case ID: 190500100

## STAIN REMOVAL PROTOCOL FOR VINYL COMPOSITION TILE (VCT)

**Stain Removal Protocol for Vinyl Composition Tile (VCT)**

The following procedures are recommended for removing stains from rust, juice, wine, hair dye, etc.

### Soak Method

1. Strip and remove any existing finish and debris from the floor to expose the base tile.

2. Place white paper towels on the stain and pour brand-name bleach on the towel, OR soak clean white rags with bleach product and place on stained area. Keep the paper towels or rags wet with bleach for as long as it takes to lift or transfer the stain to the paper towel.

3. If stain is absorbed deep into the pores of the tile, repeat step 2 until stain is removed. Contractor may also scrub with a blue pad.

4. Rinse the floor and vacuum up any slurry.

5. Thoroughly rinse area with a Neutral Cleaner so it will accept the new finish to the VCT.

6. Apply floor finish according to contract specification.


Please note: The air system must be overridden to manually control air flow. Contractor must not pour bleach directly and freely onto stained area, due to seepage and slip and fall hazard.

### Scrub Method

1. Strip and remove any existing finish and debris from the floor to expose the base tile.

2. Wet mop over the stained area with plain water, leaving the tile wet. Sprinkle a stain removal product over the stained area. Let stand 5-10 minutes. Do not let the floor dry.

3. Utilizing No. 3 steel wool, scrub the stain lines until there are no traces left.

4. Rinse the floor and vacuum up any slurry.

5. If necessary, further scrub the area with a blue pad and cleaner, rinse and vacuum up the slurry.

6. Thoroughly rinse area with a Neutral Cleaner so it will accept the new finish to the VCT.

Case ID: 190500100

7. Apply floor finish according to contract specification.

Suggested stain removal products include, but are not limited to, the following:  Procter and Gamble Clorox Bleach, 3M Trouble Shooter, Reckitt Benckiser Zud or Barkeepers Friend, Whink Rust Stain Remover, SC Johnson Bravo, Zep SafeSolv, Other Hard Surface Stain Removers.

**Additional Specific Stain Removal Items:**

**Nail Polish**
1. Excess nail polish should be wiped away with paper towels.

2. Remaining polish should be allowed to dry, then removed with a razor blade/scraper.

3. Spot strip and apply floor finish according to contract specification to blend area.

**Cologne**
1. Excess cologne should be wiped away with paper towels.  Remaining cologne may turn the finish black.  For blackened areas, use steps 2-5.

2. Mix Neutral Cleaner according to specification and wet mop area with product.

3. Using a steel wool pad or SOS-type pad, lightly scrub affected area.

4. Thoroughly rinse area with a Neutral Cleaner.

5. Apply floor finish according to contract specification and blend area.

Case ID: 190500100

**RESTROOM CLEANING SCOPE & SPECIFICATIONS (as and when contracted <u>only</u>)**

Restroom Services to be performed as contracted:

- Wash and sanitize walls & partitions with disinfectant
- Wash and sanitize all toilet & urinal surfaces with disinfectant
- Wash and sanitize all sinks & vanity areas with disinfectant
- Sanitize light switches, handles & dispensers with disinfectant
- Clear mirror glass and polish frame
- Maintain floor drains by adding soap solutions as needed
- Wipe outside of trash receptacles as needed with disinfectant
- Thoroughly disinfect and clean baby changing table
- Dust tops of platforms, mirrors & dispensers
- Dust light fixtures and ceiling vents
- Remove scuff marks from kickplates
- Wash and sanitize doors, hardware and kickplates
- Sweep floors
- Wash floor corners and edges with disinfectant
- Mop floor with a disinfectant cleaner using a clean micro fiber mop head and double compartment mop bucket to prevent cross contamination

\* Supplier to provide all labor, supervision, equipment and chemicals.  Rite Aid to supply hand soap, liners and paper products.

Case ID: 190500100

# Exhibit B-2

Floor Care 2 Full Scrub / 2 Strip Scope

**EXHIBIT B**

**FLOOR CARE SERVICES SCOPE OF WORK**

**Overview:**    This document outlines the expectations of what and how Rite Aid external contractors must perform floor care services. Floor contractors must supply all equipment, materials and supplies necessary to provide the contracted floor services, including buffers, scrubbers, scrapers, mops, buckets, wet floor signs, vacuums and chemicals.  All floor care services are to be performed after store business hours.  For 24 hour stores, services must be performed between the hours of 11:00 PM and 5:00 AM.  The length of time to perform service presented in this document are based on a 12,000 (average across all divisions) square foot model.  Backrooms, pharmacies, lunchrooms, and carpeted areas are not included in the Basic Services.  All crews should enter an IVR at the start of every service with the MOD and IVR out with the MOD upon completion.

**Basic Services**
Basic service may be scheduled weekly, bi-weekly, or more frequently.

This service is to be performed by an auto-scrubber machine; mop and bucket service may be allowed in rare exceptions or on an emergency basis (machine broken) only.  Performed properly, the basic service should take approximately 2.5 man hours to complete.

The following tasks are considered to be basic services that a contractor performs:
- Basic service should be performed with two (2) crew members.
- Remove gum and stickers from the floor; pick up all area rugs and store out of the way. Replace when finished.
- Dust mop the entire sales floor including areas behind the registers, counters, photo areas and bathrooms regardless of location within the store. The broom should be used to clean the bathroom floors.
- Auto scrub and restore all respective floor areas.  When using an auto scrubber, damp mop corners, edges and squeegee the streaks.
- High-speed buff entire floor area, using spray buff as per manufacturer recommendations.
- Re-sweep or dust mop floor areas.
- The service ticket should remain with the store manager.

**Full Scrub**
Semi Annual program (2x /yr),scheduled between the two (2) strip services.

The full scrub is to be performed 2x/year in the summer and winter.  This service will be performed at even intervals between the 2 strip services performed in the spring and fall.  Areas included are: the sales floor (including manager's office), restrooms, lunchrooms with hard surface flooring (ex. VCT, BBT, LVT), behind service counters, and non-carpeted pharmacy areas.

- Remove gum and stickers from the floor; pick up all area rugs and store out of the way.  Replace when finished.
- Dust-mop all respective floor areas.
- Apply restoring product using manufacturer recommended ratio of ounces per gallon of cool water, to tile floor.

Case ID: 190500100

- Scrub floor using a buffer or an auto-scrubber with a green or blue pad, removing embedded dirt and soils. When using an auto scrubber, damp mop corners, edges and squeegee the streaks.
- Rinse floor with cool water.
- Allow to dry.
- Apply four (4) coats of floor finish using a rayon mop, and allow drying between coats.
- Clean any finish residue from covebase, kickplates, fixtures or non-floor surfaces.
- Buff the floors to a high shine with a high speed buffer.
- Re-sweep or dust mop floor areas.
- The service ticket should remain with the store manager.

**Note:** Propane buffers are the required equipment, unless otherwise prohibited or locations are pre-approved for battery operated units. Propane buffers should never be used during business hours, except as noted for 24-hour stores.
CONTRACTOR MUST BE SURE TO BLEND EDGES OF RECOATED AREAS WITH THE REST OF THE STORE.

**Strip**
Semi Annual Program (2x/yr.)

Strip all VCT floor surfaces (except back rooms) of all old finish, remove stains and apply all new finish to keep floor clean and shiny throughout the year. Strip and Finish application is a two (2) night project; therefore, it is expected:

- Strip service should be performed with a minimum of four (4) crew members, which can be reduced to (2) after the strip is complete. The remaining two (2) members should apply the finish and perform the buffing service.
- Remove gum and stickers from the floor; pick up all area rugs and store out of the way. Replace when finished.
- Dust mop all respective floor areas.
- Strip all respective floor areas with authorized chemical per manufacturer recommendations.
- Use scraper to remove residue/old finish from fixture edges, for a clean consistent appearance.
- Spot treat stains according to stain removal protocol (attached).
- Apply finish on First Night as follows-
  o Apply four (4) coats of finish to all tile surfaces.
  o Apply five (5) coats of finish to all tile surfaces located in high traffic areas.
- Apply finish on Second Night ("top coat" application) as follows-
  o Dust mop all respective floor areas.
  o Lightly scrub all floor areas to prepare for application of top coats of finish.
  o Apply two (2) – three (3) coats of finish to bring all tile surfaces to a total application of seven (7) coats of finish.
- Allow to dry.
- Clean any finish residue from covebase, kickplates, fixtures or non-floor surfaces.
- Buff the floors to a high shine with a high speed buffer.
- Re-sweep or dust mop respective floors.
- The service ticket should remain with the store manager.

Case ID: 190500100

## Carpet Cleaning

### Step 1: Vacuum

Commercial Approach: Using a commercially appropriate upright or backpack vacuum that incorporates brushing or beating action, all carpet surfaces shall be vacuumed and left clean of all dust, and loose and imbedded dirt. If necessary, spot clean using a dry cleaner or spot remover to leave the carpet clean of spots and stains. Gum and stickers should be removed with appropriate "freeze spray" technology or other non-damaging chemical application.  Areas not accessible with a beating type vacuum cleaner will be cleaned with the wand attachment or separate portable vacuum. Upon completion, carpet must be free of dirt, dust, stains and embedded debris.

### Step 2:  Extraction Methods (Please use A or B)

Moveable furniture (including but not limited to waiting area chairs and tables) shall be moved before cleaning and shall be moved back into place after the carpet is cleaned, placing all furniture on moisture barriers if carpet is damp.

**A.   Hot Extraction Method**

Use a hot extraction method safe for all carpets, and that is quick-drying. Immediately before cleaning, vacuum, spot clean and pre-treat heavily soiled areas. Clean all carpeted surfaces with the extraction head, changing water with the frequency necessary to prevent dirty water residue on the carpet surfaces.  Carpet should not show streaks or lines from where the extraction head was applied. Following extraction, vacuum any additional debris left on the carpet, so that all carpet surface is fully clean.

**B.   Dry Cleaning Method**

Use a dry chemical method safe for all carpets.  Immediately before cleaning, vacuum, spot clean and pre-treat heavily soiled areas. Apply appropriate dry chemical to the carpet surfaces and wait the manufacturer's recommended time to allow product to infiltrate.  Using the extraction head of the vacuum, clean all carpeted surfaces to remove the chemical, dirt and by-products.  The carpet should not be left with a sticky residue.  Following extraction, vacuum any additional debris left on the carpet, so that all carpet surface is fully clean.

Case ID: 190500100

**SIMULATED WOOD FLOORING SURFACE**

**Simulated Wood Flooring Surface**

In all Rite Aid locations containing the simulated wood flooring, the following scope of work should be utilized in the <u>wood floor area only</u>:

**Basic Service**
- Dry mop to remove any surface dirt or residue, including gum or stickers.
- Wet mop with clean cold water.

**Mini-Scrub Service**
- Dry mop to remove any surface dirt or residue.
- Clean surface area using non-residual degreaser with a wet mop and clean water, or an auto-scrubber with a white pad only.
- Apply one (1) coat of finish. DO NOT BURNISH.

**Strip**
- Dry mop to remove any surface dirt or residue.
- Clean surface area using non-residual degreaser with a wet mop and clean water, or an autoscrubber with a white pad only.
- Apply three (3) coats of finish. DO NOT BURNISH.

Case ID: 190500100

**STAIN REMOVAL PROTOCOL FOR VINYL COMPOSITION TILE (VCT)**

**Stain Removal Protocol for Vinyl Composition Tile (VCT)**

The following procedures are recommended for removing stains from rust, juice, wine, hair dye, etc.

**Soak Method**
1. Strip and remove any existing finish and debris from the floor to expose the base tile.

2. Place white paper towels on the stain and pour brand-name bleach on the towel, OR soak clean white rags with bleach product and place on stained area.  Keep the paper towels or rags wet with bleach for as long as it takes to lift or transfer the stain to the paper towel.

3. If stain is absorbed deep into the pores of the tile, repeat step 2 until stain is removed.  Contractor may also scrub with a blue pad.

4. Rinse the floor and vacuum up any slurry.

5. Thoroughly rinse area with a Neutral Cleaner so it will accept the new finish to the VCT.

6. Apply floor finish according to contract specification.

Please note:  The air system must be overridden to manually control air flow.  Contractor must not pour bleach directly and freely onto stained area, due to seepage and slip and fall hazard.

**Scrub Method**
1. Strip and remove any existing finish and debris from the floor to expose the base tile.

2. Wet mop over the stained area with plain water, leaving the tile wet.  Sprinkle a stain removal product over the stained area.  Let stand 5-10 minutes. Do not let the floor dry.

3. Utilizing No. 3 steel wool, scrub the stain lines until there are no traces left.

4. Rinse the floor and vacuum up any slurry.

5. If necessary, further scrub the area with a blue pad and cleaner, rinse and vacuum up the slurry.

6. Thoroughly rinse area with a Neutral Cleaner so it will accept the new finish to the VCT.

Case ID: 190500100

7.  Apply floor finish according to contract specification.

<u>Suggested stain removal products include, but are not limited to, the following</u>:  Procter and Gamble Clorox Bleach, 3M Trouble Shooter, Reckitt Benckiser Zud or Barkeepers Friend, Whink Rust Stain Remover, SC Johnson Bravo, Zep SafeSolv, Other Hard Surface Stain Removers.

**Additional Specific Stain Removal Items:**

**Nail Polish**
1.  Excess nail polish should be wiped away with paper towels.

2.  Remaining polish should be allowed to dry, then removed with a razor blade/scraper.

3.  Spot strip and apply floor finish according to contract specification to blend area.

**Cologne**
1.  Excess cologne should be wiped away with paper towels.  Remaining cologne may turn the finish black.  For blackened areas, use steps 2-5.

2.  Mix Neutral Cleaner according to specification and wet mop area with product.

3.  Using a steel wool pad or SOS-type pad, lightly scrub affected area.

4.  Thoroughly rinse area with a Neutral Cleaner.

5.  Apply floor finish according to contract specification and blend area.

Case ID: 190500100

**RESTROOM CLEANING SCOPE & SPECIFICATIONS (as and when contracted <u>only</u>)**

Restroom Services to be performed as contracted:

- Wash and sanitize walls & partitions with disinfectant
- Wash and sanitize all toilet & urinal surfaces with disinfectant
- Wash and sanitize all sinks & vanity areas with disinfectant
- Sanitize light switches, handles & dispensers with disinfectant
- Clear mirror glass and polish frame
- Maintain floor drains by adding soap solutions as needed
- Wipe outside of trash receptacles as needed with disinfectant
- Thoroughly disinfect and clean baby changing table
- Dust tops of platforms, mirrors & dispensers
- Dust light fixtures and ceiling vents
- Remove scuff marks from kickplates
- Wash and sanitize doors, hardware and kickplates
- Sweep floors
- Wash floor corners and edges with disinfectant
- Mop floor with a disinfectant cleaner using a clean micro fiber mop head and double compartment mop bucket to prevent cross contamination

\* Supplier to provide all labor, supervision, equipment and chemicals.  Rite Aid to supply hand soap, liners and paper products.

Case ID: 190500100

# Exhibit B-3

## Floor Care NYC Metro Full Scrub Scope

Case ID: 190500100

**EXHIBIT B**

**FLOOR CARE SERVICES SCOPE OF WORK**

**Overview:** This document outlines the expectations of what and how Rite Aid external contractors must perform floor care services. Floor contractors must supply all equipment, materials and supplies necessary to provide the contracted floor services, including buffers, scrubbers, scrapers, mops, buckets, wet floor signs, vacuums and chemicals. All floor care services are to be performed after store business hours. For 24 hour stores, services must be performed between the hours of 11:00 PM and 5:00 AM. The length of time to perform service presented in this document are based on a 12,000 (average across all divisions) square foot model. Backrooms, pharmacies, lunchrooms, and carpeted areas are not included in the Basic Services. All crews should enter an IVR at the start of every service with the MOD and IVR out with the MOD upon completion.

<u>Basic Services</u>
Basic service may be scheduled weekly, bi-weekly, or more frequently.

This service is to be performed by an auto-scrubber machine; mop and bucket service may be allowed in rare exceptions or on an emergency basis (machine broken) only. Performed properly, the basic service should take approximately 2.5 man hours to complete.

The following tasks are considered to be basic services that a contractor performs:
- Basic service should be performed with two (2) crew members.
- Remove gum and stickers from the floor; pick up all area rugs and store out of the way. Replace when finished.
- Dust mop the entire sales floor including areas behind the registers, counters, photo areas and bathrooms regardless of location within the store. The broom should be used to clean the bathroom floors.
- Auto scrub and restore all respective floor areas. When using an auto scrubber, damp mop corners, edges and squeegee the streaks.
- High-speed buff entire floor area, using spray buff as per manufacturer recommendations.
- Re-sweep or dust mop floor areas.
- The service ticket should remain with the store manager.

<u>Full Scrub</u>
3x/yr. program to be performed in the late summer, late fall, and mid-winter.

Areas to be included are: the sales floor (including manager's office), restrooms, lunchrooms with hard surface flooring (ex. VCT, BBT, LVT), behind service counters, and non-carpeted pharmacy areas.

- Remove gum and stickers from the floor; pick up all area rugs and store out of the way. Replace when finished.
- Dust-mop all respective floor areas.
- Apply restoring product using manufacturer recommended ratio of ounces per gallon of cool water, to tile floor.

Case ID: 190500100

- Scrub floor using a buffer or an auto-scrubber with a green or blue pad, removing embedded dirt and soils.  When using an auto scrubber, damp mop corners, edges and squeegee the streaks.
- Rinse floor with cool water.
- Allow to dry.
- Apply four (4) coats of floor finish using a rayon mop, and allow drying between coats.
- Clean any finish residue from covebase, kickplates, fixtures or non-floor surfaces.
- Buff the floors to a high shine with a high speed buffer.
- Re-sweep or dust mop floor areas.
- The service ticket should remain with the store manager.

**Note:**  Propane buffers are the required equipment, unless otherwise prohibited or locations are pre-approved for battery operated units.  Propane buffers should never be used during business hours, except as noted for 24-hour stores.
CONTRACTOR MUST BE SURE TO BLEND EDGES OF RECOATED AREAS WITH THE REST OF THE STORE.

**Strip**
Annual Program (1x/yr.)

Strip all VCT floor surfaces (except back rooms) of all old finish, remove stains and apply all new finish to keep floor clean and shiny throughout the year.  Strip and Finish application is a two (2) night project; therefore, it is expected:

- Strip service should be performed with a minimum of four (4) crew members, which can be reduced to (2) after the strip is complete.  The remaining two (2) members should apply the finish and perform the buffing service.
- Remove gum and stickers from the floor; pick up all area rugs and store out of the way.  Replace when finished.
- Dust mop all respective floor areas.
- Strip all respective floor areas with authorized chemical per manufacturer recommendations.
- Use scraper to remove residue/old finish from fixture edges, for a clean consistent appearance.
- Spot treat stains according to stain removal protocol (attached).
- Apply finish on First Night as follows-
    o Apply four (4) coats of finish to all tile surfaces.
    o Apply five (5) coats of finish to all tile surfaces located in high traffic areas.
- Apply finish on Second Night ("top coat" application) as follows-
    o Dust mop all respective floor areas.
    o Lightly scrub all floor areas to prepare for application of top coats of finish.
    o Apply two (2) -- three (3) coats of finish to bring all tile surfaces to a total application of seven (7) coats of finish.
- Allow to dry.
- Clean any finish residue from covebase, kickplates, fixtures or non-floor surfaces.
- Buff the floors to a high shine with a high speed buffer.
- Re-sweep or dust mop respective floors.

Case ID: 190500100

- The service ticket should remain with the store manager.

**Carpet Cleaning**

**Step 1: Vacuum**
Commercial Approach: Using a commercially appropriate upright or backpack vacuum that incorporates brushing or beating action, all carpet surfaces shall be vacuumed and left clean of all dust, and loose and imbedded dirt. If necessary, spot clean using a dry cleaner or spot remover to leave the carpet clean of spots and stains. Gum and stickers should be removed with appropriate "freeze spray" technology or other non-damaging chemical application. Areas not accessible with a beating type vacuum cleaner will be cleaned with the wand attachment or separate portable vacuum. Upon completion, carpet must be free of dirt, dust, stains and embedded debris.

**Step 2: Extraction Methods** (Please use A or B)
Moveable furniture (including but not limited to waiting area chairs and tables) shall be moved before cleaning and shall be moved back into place after the carpet is cleaned, placing all furniture on moisture barriers if carpet is damp.

**A. Hot Extraction Method**

Use a hot extraction method safe for all carpets, and that is quick-drying. Immediately before cleaning, vacuum, spot clean and pre-treat heavily soiled areas. Clean all carpeted surfaces with the extraction head, changing water with the frequency necessary to prevent dirty water residue on the carpet surfaces. Carpet should not show streaks or lines from where the extraction head was applied. Following extraction, vacuum any additional debris left on the carpet, so that all carpet surface is fully clean.

**B. Dry Cleaning Method**

Use a dry chemical method safe for all carpets. Immediately before cleaning, vacuum, spot clean and pre-treat heavily soiled areas. Apply appropriate dry chemical to the carpet surfaces and wait the manufacturer's recommended time to allow product to infiltrate. Using the extraction head of the vacuum, clean all carpeted surfaces to remove the chemical, dirt and by-products. The carpet should not be left with a sticky residue. Following extraction, vacuum any additional debris left on the carpet, so that all carpet surface is fully clean.

Case ID: 190500100

**SIMULATED WOOD FLOORING SURFACE**

**Simulated Wood Flooring Surface**

In all Rite Aid locations containing the simulated wood flooring, the following scope of work should be utilized in the <u>wood floor area only</u>:

**Basic Service**
- Dry mop to remove any surface dirt or residue, including gum or stickers.
- Wet mop with clean cold water.

**Mini-Scrub Service**
- Dry mop to remove any surface dirt or residue.
- Clean surface area using non-residual degreaser with a wet mop and clean water, or an auto-scrubber with a white pad only.
- Apply one (1) coat of finish.  DO NOT BURNISH.

**Strip**
- Dry mop to remove any surface dirt or residue.
- Clean surface area using non-residual degreaser with a wet mop and clean water, or an autoscrubber with a white pad only.
- Apply three (3) coats of finish.  DO NOT BURNISH.

Case ID: 190500100

**STAIN REMOVAL PROTOCOL FOR VINYL COMPOSITION TILE (VCT)**

**Stain Removal Protocol for Vinyl Composition Tile (VCT)**

The following procedures are recommended for removing stains from rust, juice, wine, hair dye, etc.

**Soak Method**

1. Strip and remove any existing finish and debris from the floor to expose the base tile.

2. Place white paper towels on the stain and pour brand-name bleach on the towel, OR soak clean white rags with bleach product and place on stained area.  Keep the paper towels or rags wet with bleach for as long as it takes to lift or transfer the stain to the paper towel.

3. If stain is absorbed deep into the pores of the tile, repeat step 2 until stain is removed.  Contractor may also scrub with a blue pad.

4. Rinse the floor and vacuum up any slurry.

5. Thoroughly rinse area with a Neutral Cleaner so it will accept the new finish to the VCT.

6. Apply floor finish according to contract specification.

Please note:  The air system must be overridden to manually control air flow.  Contractor must not pour bleach directly and freely onto stained area, due to seepage and slip and fall hazard.

**Scrub Method**

1. Strip and remove any existing finish and debris from the floor to expose the base tile.

2. Wet mop over the stained area with plain water, leaving the tile wet.  Sprinkle a stain removal product over the stained area.  Let stand 5-10 minutes. Do not let the floor dry.

3. Utilizing No. 3 steel wool, scrub the stain lines until there are no traces left.

4. Rinse the floor and vacuum up any slurry.

5. If necessary, further scrub the area with a blue pad and cleaner, rinse and vacuum up the slurry.

6. Thoroughly rinse area with a Neutral Cleaner so it will accept the new finish to the VCT.

Case ID: 190500100

7.  Apply floor finish according to contract specification.

<u>Suggested stain removal products include, but are not limited to, the following:</u>  Procter and Gamble Clorox Bleach, 3M Trouble Shooter, Reckitt Benckiser Zud or Barkeepers Friend, Whink Rust Stain Remover, SC Johnson Bravo, Zep SafeSolv, Other Hard Surface Stain Removers.

**Additional Specific Stain Removal Items:**

**Nail Polish**
1.  Excess nail polish should be wiped away with paper towels.

2.  Remaining polish should be allowed to dry, then removed with a razor blade/scraper.

3.  Spot strip and apply floor finish according to contract specification to blend area.

**Cologne**
1.  Excess cologne should be wiped away with paper towels.  Remaining cologne may turn the finish black.  For blackened areas, use steps 2-5.

2.  Mix Neutral Cleaner according to specification and wet mop area with product.

3.  Using a steel wool pad or SOS-type pad, lightly scrub affected area.

4.  Thoroughly rinse area with a Neutral Cleaner.

5.  Apply floor finish according to contract specification and blend area.

Case ID: 190500100

**RESTROOM CLEANING SCOPE & SPECIFICATIONS (as and when contracted <u>only</u>)**

Restroom Services to be performed as contracted:

- Wash and sanitize walls & partitions with disinfectant
- Wash and sanitize all toilet & urinal surfaces with disinfectant
- Wash and sanitize all sinks & vanity areas with disinfectant
- Sanitize light switches, handles & dispensers with disinfectant
- Clear mirror glass and polish frame
- Maintain floor drains by adding soap solutions as needed
- Wipe outside of trash receptacles as needed with disinfectant
- Thoroughly disinfect and clean baby changing table
- Dust tops of platforms, mirrors & dispensers
- Dust light fixtures and ceiling vents
- Remove scuff marks from kickplates
- Wash and sanitize doors, hardware and kickplates
- Sweep floors
- Wash floor corners and edges with disinfectant
- Mop floor with a disinfectant cleaner using a clean micro fiber mop head and double compartment mop bucket to prevent cross contamination

\* Supplier to provide all labor, supervision, equipment and chemicals.  Rite Aid to supply hand soap, liners and paper products.

Case ID: 190500100

# Exhibit B-4

## LVT Floor Care Scope

Case ID: 190500100

Store Development Department Operational Guidance Memorandum

| Department: | Store Development |
|---|---|
| Guidance Document: | LVT Floor-care Specifications & Procedures |
| Description: | Floor-care maintenance procedures for all stores with a either a full LVT (luxury vinyl tile) field flooring or a LVT field and LVT pathway flooring. |
| Maintained By: | Construction Services Group |
| Date: | April 15, 2012 |

The following sections list the approved floor-care products and procedures for treating new or existing sales area floors with new LVT field and pathway flooring or LVT field only with no pathway.

- Approved Products
- New LVT Floors Care
- Daily Care
- Weekly Care
- Quarterly Care
- Annual Care

1.0    Approved Products - Specification Sheets Attached

- Attachment #1: Carefree Matte Finish
- Attachment #2: Prominence Heavy Duty Floor Cleaner
- Attachment #3: Pro Strip Floor Stripper

2.0    New LVT Floors - Contractor Cleaning & Finishing

- Dust mop
- Pro Strip diluted at 1 part stripper to 6 parts water.
- Stripper solution 10 - 12 minute dwell time.  Do not allow solution to dry out.
- Auto-scrub with green or blue pads.
- Pick up slurry with auto-scrubber and clean water solution tank.
- Rinse with clean water, mop and bucket.
- Apply 4 coats of Carefree Matte finish 1st night.

CON-PR-06-050

Case ID: 190500100

- Deep scrub and apply additional 2 coats on subsequent night.
- Burnishing (buffing) flooring for shine:
  - Burnish LVT flooring using an electric buffing machine with an approved 3M Aqua pad or equivalent. Machine speed not to exceed 325 rpm.

Notes:
- Wait a minimum of 30 minutes for dry time between applications of finish coats. Add 5 minutes dry time to each successive coat. Temperature and humidity will affect dry times. Maximum 4 coats applied in one evening.
- NEVER use brown or black pads on LVT flooring.

3.0    Daily - Rite Aid Personnel

- Dust mop.
- Wet floor signs.
- Mop bucket with clean cool water.
- Clean mop.
- Damp mop 10' x 10' area.

4.0    Auto-scrub - Contractor Cleaning (Twice week or frequency set by retail facilities base on transaction count)

- Dust mop.
- Auto-scrub with red pads and Prominence at ¼ oz. per gallon mixed with clean water solution tank.

5.0    Deep Scrub and Recoat - Contractor Cleaning & Finishing (Quarterly)

- Dust mop.
- Auto-scrub with blue or green pads with Prominence at 1/2oz per gallon mixed with clean water solution tank.
- Apply 2 coats of Carefree Matte Finish to entire floor surface
- Additional coat should be applied to high traffic lanes for added protection
- Burnishing (buffing) flooring for shine:
  - Burnish LVT flooring using an electric buffing machine with an approved 3M Aqua pad or equivalent. Machine speed not to exceed 325 rpm.

Notes:
- Wait a minimum of 30 minutes for dry time between applications of finish coats. Add 5 minutes dry time to each successive coat. Temperature and humidity will affect dry times. Maximum 4 coats applied in one evening.
- NEVER use brown or black pads on LVT flooring.

CON-PR-06-050

Case ID: 190500100

6.0   Annual Strip and Finish - Contractor Cleaning & Finishing

- Dust mop.
- Pro Strip diluted at 1 part stripper to 6 parts water.
- Stripper solution 10 - 12 minute dwell time.  Do not allow solution to dry out.
- Auto-scrub with green or blue pads.
- Pick up slurry with auto-scrubber and clean water solution tank.
- Rinse with clean water, mop and bucket.
- Apply 4 coats Carefree Matte finish 1st night.
- Deep scrub and apply additional 2 coats on subsequent night.
- Burnishing (buffing) flooring for shine:
  o Burnish LVT flooring using an electric buffing machine with an approved 3M Aqua pad or equivalent.  Machine speed not to exceed 325 rpm.

Notes:
- Wait a minimum of 30 minutes for dry time between applications of finish coats.  Add 5 minutes dry time to each successive coat.  Temperature and humidity will affect dry times.  Maximum 4 coats applied in one evening.
- NEVER use brown or black pads on LVT flooring.

7.0   Floor Mats
- Matting protection program floor mats should be at front entrance and at back door.

8.0   VCT & LVT Floor

Stores with both VCT field flooring and LVT pathways:    Store Associates to follow Store Maintenance Manual associate responsibility guidelines.

Contractor cleaning follows standard VCT Scope of work and mini scrub program with modification t   o the burnishing special attention reduced burnishing speed on the Pathway LVT.

Revision History

| Revision | Date | Description of revision | Author |
|----------|------|------------------------|--------|
| 0 | 04/15/2012 | Original | Yantis / Lombardo |

CON-PR-06-050

Case ID: 190500100



Attachment #1

# Carefree® Matte
## Low Gloss Floor Finish



**A versatile high performance floor finish without the high gloss.**

**Versatile**
- Designed to work on a wide variety of substrates and in many different maintenance methods
- Performs exceptionally well on linoleum, decorative vinyl and stone surfaces
- Provides exceptional clarity with minimal gloss—ideal for maintaining a natural substrate appearance or for locations where high gloss is not preferred

**Long-Lasting Performance**
- Provides terrific long-term protection for all of your walking surfaces
- Low gloss characteristics help to hide blemishes, cut lines, traffic lanes and dirt embedment to provide an even, clean look over a longer period of time

**Designed For**
- Education
- Retail
- BSC
- Government

For additional information, please contact us at +1 800 558 2332 or at www.diversey.com

# Use Overview

**Carefree® Matte Low Gloss Floor Finish** is a high performance, low gloss coating designed to work on a variety of different substrates in a variety of different maintenance procedures.



## Applying Floor Finish
- Strip floor using Diversey stripper according to directions.
- Apply 2–3 coats of finish using a clean mop or the TrailBlazer™/MC Floor Finish Applicator.
- Allow 30 minutes drying time between coats.
- Temperature, humidity and ventilation may affect drying time.

## Maintenance
- Dust mop or sweep, clean floor with mop or autoscrubber using the recommended Diversey brand cleaner following label directions.

## Recoating
- Dust mop or sweep, clean floor with mop or autoscrubber using the recommended Diversey brand cleaner following label directions.
- Apply 1 or 2 coats using a clean mop.

## Precautions
- Do not dilute.
- Do not use on surfaces colder than 10° C (50° F).
- To avoid contamination, do not return unused finish to original container.
- To maintain matte appearance do not buff with high speed machines (1500–3000).
- Contaminants on floors can cause floors to become slippery.
- When applying to dark floors, always test in small area prior to use.

## Product Specifications

| Description | |
|---|---|
| Color/Form | Milky white, liquid |
| Flash Point | >200° F (>93.4° C) |
| pH | 8.55 |
| Scent | Ammonia |
| Shelf Life | 2 years |
| Solubility | Dispersible |
| Specific Gravity | 1.02 |

## Available Items

| Product Code | Description/Package Size | Dilution |
|---|---|---|
| 5104757 | 1 x 5 gallon / 18.9 L Envirobox™/MC (TrailBlazer™/MC ready) | Ready-To-Use |

## Safety Reminder

Please make sure your employees read and understand the product label and Material Safety Data Sheet before using this product. The label contains directions for use, and both the label and MSDS contain hazard warnings, precautionary statements and first aid procedures. MSDS are available on-line at www.diversey.com or by calling 888 352 2249.

## Hazard Rating

| HMIS | | NFPA |
|---|---|---|
| 1 | Health | 1 |
| 0 | Flammability | 0 |
| 0 | Reactivity | 0 |

4=Very High; 3=High; 2=Moderate; 1=Slight; 0=Insignificant



Case ID: 190500100



Attachment #2

# Prominence™/MC
## Heavy Duty Floor Cleaner



A highly effective cleaner designed to remove soils and oils without dulling or altering the appearance of your floor. Part of a comprehensive floor care offering for cleaning, maintaining, stripping and finishing floors.

**Powerful Without Dulling**
- pH neutral when diluted
- Quickly emulsifies dirt for fast soil removal

**Labor Saving**
- Floors dry film -free, no rinsing required
- Keep floor finishes cleaner

**Economical**
- Super-concentrated formula delivers powerful cleaning performance for pennies per day
- Multiple dilution ratios to handle all types of soil loads

**Environmentally Preferred**
- Meets Green Seal™ GS-37 Standard for industrial and institutional cleaners

**Designed For**
- Healthcare
- Education
- Retail
- BSC
- Government





For additional information, please contact us at -1 800 558 2332 or at www.diversey.com

Case ID: 190500100

## Use Overview

**Prominence™ HD Heavy Duty Floor Cleaner** is highly effective at helping to extend the life of your floor coating by removing soils and oils from floors without dulling or altering the appearance of floor sealers or finishes. This Green Seal™ certified cleaner offers the flexibility of multiple dilution ratios for light duty cleaning, daily cleaning or deep scrubbing depending on soil loads and/or the specific needs of your maintenance program.

▸ When cleaning floors position wet-floor signs around area to be cleaned.

### AccuMix² Use Directions
▸ Use cold water for all applications.
▸ *For Light Duty Cleaning:* Fill autoscrubber or mop bucket with product diluted at 1:1024 and scrub using red pads. Pick up soil and excess cleaner with a tightly wrung-out cleaning mop.
▸ *For Daily Cleaning:* Fill autoscrubber or mop bucket with product diluted at 1:512 and scrub, using red pads. Pick up soil and excess cleaner with a tightly wrung-out cleaning mop.
▸ *For Deep Scrubbing:* Fill autoscrubber or mop bucket with product diluted at 1:256 and scrub with green or blue pads. Pick up soil and excess cleaner with a tightly wrung-out cleaning mop.

### RTD² Use Directions
▸ SEE RTD* OPERATING INSTRUCTIONS SHEET ENCLOSED IN EACH CASE.
▸ Connect to cold water tap. Use cold water for all applications.
▸ *For Daily Cleaning:* Dispense diluted product into autoscrubber or mop bucket with product diluted at 1:512 and scrub, using red pads. Pick up soil and excess cleaner with a tightly wrung-out cleaning mop.
▸ *For Deep Scrubbing:* Fill autoscrubber or mop bucket with product diluted at 1:256 and scrub with green or blue pads. Pick-up soil and excess cleaner with a tightly wrung-out cleaning mop.

### J-Fill² Use Directions
▸ Connect to cold water tap. Use cold water for all applications.
▸ *For Daily Cleaning:* Dispense diluted product into autoscrubber or mop bucket with product diluted at 1:512 and scrub, using red pads. Pick up soil and excess cleaner with a tightly wrung-out cleaning mop.
**Note:** Floors will be slippery when wet or contaminated with foreign materials. Promptly clean up spills and foreign materials.

## Product Specifications

| Description | |
| --- | --- |
| **Color/Form** | Clear yellow liquid |
| **Flash Point** | > 200° F (> 93.4° C) |
| **pH** | 8.4 (Concentrate) 7.0 (Use Dilution 1:256) |
| **Scent** | Citrus |
| **Shelf Life** | 2 years |
| **Solubility** | Complete |
| **Specific Gravity** | 1.0177 |

## Available Items

| Product Code | Description/Package Size | Dilution |
| --- | --- | --- |
| 4996440 | 6 x 32 oz. / 946 mL AccuMix* Containers | 1:256, 1:512, 1:1024 |
| 4996458* | 1 x 5 L / 1.32 gallon RTD* Units | 1:256, 1:512 |
| 4996466* | 2 x 2.5 L / 84.5 oz. J-Fill* Bottles | 1:256, 1:512 |

* Meets Green Seal's GS-37 standard

## Hazard Rating

| HMIS | Concentrate | NFPA | HMIS | Use Dilution 1:256 | NFPA |
| --- | --- | --- | --- | --- | --- |
| 2 | Health | 2 | 0 | Health | 0 |
| 0 | Flammability | 0 | 0 | Flammability | 0 |
| 0 | Reactivity | 0 | 0 | Reactivity | 0 |

4=Very High; 3=High; 2=Moderate; 1=Slight; 0=Insignificant.

## Safety Reminder

Please make sure your employees read and understand the product label and Material Safety Data Sheet before using this product. The label contains directions for use, and both the label and MSDS contain hazard warnings, precautionary statements and first aid procedures. MSDS are available on-line at www.diversey.com or by calling 888 352 2249. Wear chemical resistant gloves and chemical-splash goggles when dispensing concentrate. Improper use or dilution may result in damage to surfaces and may result in health and physical hazards that match those of the concentrate.

Dispose of any unused product in accordance with federal, state and local regulations.

© 2015 Diversey, Inc. 8 Oak Park Drive, Bedford, MA 01730. All Rights Reserved. SKU 90012152

**Diversey**
for a cleaner, healthier future™



Attachment #3

# Pro Strip™
## Floor Stripper



A professional strength stripper designed for the removal of "tough to strip" finishes and sealers.

**Rektes Labor**

**Reduces Labor**
- Fast penetration of UHS burnished finishes and sealer layers
- Designed to work the first time to reduce "restrips"

**Low Odor**
- Does not contain butyl
- Reduces facility complaints regarding floor stripping odors

**Versatile Problem Solver**
- Works in cool water
- Variable dilution rate to match the job

**Designed For**
- Healthcare
- Education
- Retail
- BSC
- Government



Case ID: 190500100

# Use Overview

**Pro Strip™ Floor Stripper** is a high performance, variable dilution stripper that delivers outstanding performance and economy. The powerful formula emulsifies the toughest burnished films on contact without "gumming-up" or unpleasant odors and eliminates costly multiple strip cycles. A broad range of recommended dilutions can be matched to performance requirements for greater economy.



- Use appropriate personal protective equipment. Dilute product as follows: Light Build-up of Floor Finishes: Dilute product between 1:8 (16 fl. oz./gal.) and 1:10 (13 fl. oz./gal.) with cool water. Heavy Build-up of Floor Finishes: Dilute product between 1:4 (32 fl. oz./gal.) and 1:6 (24 fl. oz./gal.) with cool water. Heavy Build-up of Concrete Sealers: Dilute product at 1:2 (64 fl. oz./gal.) with cool water.

- Blockade areas to be stripped. Floors will be very slippery when stripper is applied. Exercise caution.

- Apply liberal amounts of solution uniformly to floor with a mop. Start with the edges to give them more soak time. If splashing occurs, wipe off surfaces with a clean rag dampened with water.

- Let stripper solution soak for 5-10 minutes. Mop agitate to loosen finish or sealer. Re-wet as necessary, do not allow stripper to dry on the floor. Longer soak times may be necessary in cases of extreme buildup.

- Hand or machine scrub thoroughly using black pads or stripping brush.

- Pick-up all of the solution with a clean mop, wet vac or automatic scrubber.

- Mop up any "tracks" left by wet vacs or automatic scrubbers before they dry. Thoroughly rinse floor with clean water, using a mop and bucket.

- Let floor dry completely before applying recommended Diversey brand floor sealer or finish.

**Important:**

Do not use on wood, linoleum, rubber, marble, painted surfaces, on surface colored and acid dyed concrete floors as this product may harm these surfaces. Test for softening or color bleeding on asphalt floors before using.

## Product Specifications

| Description | |
|---|---|
| **Color/Form** | Colorless liquid |
| **Dilution** | 1:2–1:6 (Heavy Build-up) |
| | 1:8–1:10 (Light Build-up) |
| **Flash Point** | > 200° F (> 93.4° C) |
| **pH** | 13.4 (Concentrate) |
| | 13.0 (Dilution, 1:2) |
| **Scent** | Cherry Almond |
| **Shelf Life** | 2 years |
| **Solubility** | Complete |
| **Specific Gravity** | 1.06 |

## Available Items

| Product Code | Description:Package Size | Dilution |
|---|---|---|
| 5032351 | 4 x 1 gallon / 3.78 L Containers | 1:2–1:10 |
| 5032360 | 1 x 5 gallon / 18.9 L Envirobox™™ | 1:2–1:10 |

## Safety Reminder

Please make sure your employees read and understand the product label and Material Safety Data Sheet before using this product. The label contains directions for use, and both the label and MSDS contain hazard warnings, precautionary statements and first aid procedures. MSDS are available on-line at www.diversey.com or by calling 888 352 2249.

## Hazard Rating

| HMIS | Concentrate | NFPA |
|---|---|---|
| 3 | Health | 3 |
| 0 | Flammability | 0 |
| 0 | Reactivity | 0 |

| HMIS | Use Dilution 1:2 | NFPA |
|---|---|---|
| 2 | Health | 2 |
| 0 | Flammability | 0 |
| 0 | Reactivity | 0 |

4=Very High; 3=High; 2=Moderate; 1=Slight; 0=Insignificant.

For additional information, please contact us at +1 800 558 2332 or at www.diversey.com
© 2011 Diversey, Inc., 8310 16th Street, Sturtevant, WI 53177-1964, Attn: Regulatory Department, SPC-05-071-2601



# Exhibit C

## Approved Chemical Listing

# EXHIBIT C

## Floor Chemicals

**a.**  Contractor shall provide all floor cleaning chemicals.  The following manufacturers and their chemicals are approved for use:

Diversey, 8310 16th St., PO Box 902, Sturtevant, WI 53177
www.diversey.com  1-262-631-4001

- Diversey Vectra Floor Finish
- Diversey Stride Neutra Cleaner
- Diversey Bravo 1500+ UHS Stripper
- Diversey Revive Maintainer and Revive Plus SC

Pioneer Eclipse Corp., 1 Eclipse Rd., PO Box 909, Sparta, NC 28675
www.pioneer-eclipse.com  1-800-367-3550

- Pioneer Eclipse Equinox Floor Coating
- Pioneer Eclipse Eclipse Neutral Floor Cleaner
- Pioneer Eclipse Formula X UHP Ultra High Performance Stripper
- Pioneer Eclipse Rebound Maintainer
- Pioneer Eclipse Laminator Product
- Pioneer Diamond Shine

Betco Corporation, 1001 Brown Avenue Toledo, OH 43607
www.betco.com  888-462-3826

- Betco Extreme Floor Stripper
- Betco One Step – Floor Cleaner/Restorer
- Betco Express with SRT Floor Finish
- Betco Hard As Nails

Ecolab Inc. Institutional Division 370 N. Wabasha Street St. Paul, MN 55102
1-800-352-5326

- Ecolab Gemstar Stratus

Other chemicals as proposed by Contractor and approved by the Rite Aid corporate representative in writing and attached to this Agreement.

**b.**  Chemicals shall be used from the original containers, not re-packaged, and applied in accordance with manufacturer's instructions and all applicable laws.

c.  Rite Aid reserves the right to change floor chemical specifications anytime during the term of the Agreement.  **Use of non-approved chemical products or failure to follow manufacturer's instructions shall be considered just cause to terminate the Agreement.**  Notwithstanding the foregoing, Rite Aid retains the right to require the contractor to correct the discovered deficiency within ten (10) days at no additional cost to Rite Aid.

d.  NO equipment, or buckets of finish, cleaner, laminator or stripper should be left in the store for any reason.  In the event that leaving a product is unavoidable, all buckets of floor chemicals shall be clearly marked **"Contractor Use Only"** and shall be removed within thirty (30) days.

# Exhibit D

## Invoicing Instructions

Exhibit D
## INVOICING INSTRUCTIONS

*When this Exhibit D is attached to any agreement between Rite Aid and a contractor, the terms of both the agreement and any preceding exhibits prevail over the terms in this Exhibit. Not all provisions in this Exhibit are relevant to all agreements attached thereto.

The content of this Exhibit provides policies and procedures related to facility repair and maintenance proposals, quotes and payments. The Exhibit also contains examples of acceptable invoice format and a Validated Service Ticket ("VST") or its alternative, for satisfactory work verification.

The following is included in this Exhibit:

- Retail Facilities Contractor Instruction Sheet (Pages 2-3)

- Retail Facilities Proposal for Repair Procedure (Page 4)

- Retail Facilities Invoice Procedure (Pages 5)

- Sample Work Order (Page 6)

- Sample Invoice (Page 7)

- Sample VST Exception Request Form (Page 8)

- Approved Affidavit Form (Page 9)

For questions about the enclosed forms, please contact a Rite Aid Retail Facilities Administrator for guidance at (717) 730-8200. Compliance with the policies and procedures will assist Rite Aid in providing clear direction to the contractor and minimize unnecessary delays in invoice processing time. These guidelines apply when dealing with Rite Aid representatives directly, but also through another source as Rite Aid may designate from time to time, such as a third party call center or service consolidator.

Case ID: 190500100

# Retail Facilities Contractor Instruction Sheet

All Contractor invoicing must adhere to the following attached policy, procedure and invoice guidelines. Invoices not in compliance with the attached guidelines will not be paid.

**Policy Guidelines:**

1.) **Invoices for ALL work completed must be accompanied by a verification in the form of a VST or approved alternative (e.g. IVR, post-service confirmation record, etc.).** This requirement includes scheduled, preventative maintenance and on-demand work unless a prior exception has been issued in writing by Retail Facilities and the Accounts Payable Department. Exceptions are typically provided for scheduled, preventative maintenance when the Contractor can provide an acceptable electronic verification of work completion along with the invoice. Exceptions may be granted in whole or in part to a particular Contractor, or regarding a particular Service. Annual Exceptions may be requested in writing in the attached format and sent to the attention of:

   Robert Fazakerley, Vice President, Retail and Corporate Facilities
   Rite Aid Corporation
   30 Hunter Lane
   Camp Hill, PA 17011

2.) A Retail Facilities Repair and Maintenance representative authorizing service will issue a dispatch number for all facilities repair work. The dispatch number will serve as the authorization number and must be included on the service ticket and invoice.

3.) **When receiving an emergency call directly from a Rite Aid Store**, respond to the service request and contact the Rite Aid Repair and Maintenance Request line immediately at (866) 532-9927 to report the emergency call and obtain a dispatch number. An emergency is defined as an incident involving danger or injury to human life or severe damage or loss to Rite Aid property/assets, including products for resale.

4.) Invoices must be accompanied by the appropriate supporting paperwork such as guarantees, warranties, permits, manuals, etc.

5.) All invoices must be received by Rite Aid within thirty (30) days from the date the work was performed.

6.) Invoice payment check stubs indicate the invoice numbers covered by a check. Contractors shall credit these specific invoices directly, instead of applying the check amount to the total balance or oldest invoices.

7.) For invoices in excess of $5,000, or upon Rite Aid's request, Contractor shall include a sworn statement indicating all indebtedness is paid in full and provide waivers of liens from subcontractors, suppliers and any party with a right to assert a lien.

8.) The Contractor's employees must be properly licensed to perform the trade for which Rite Aid has engaged it, as required by all jurisdictions having authority.

9.) It is the responsibility of the Contractor to obtain all necessary trade permits and inspections required for the project at hand. Plans, drawings, permits and inspection fees should be included as a separate line item on all invoicing.

10.) Travel Charges: A company vehicle and customary mechanic's tools are essential to the work performance of contractors and tradesmen, therefore Rite Aid does not pay separate truck or small tool charges.

Case ID: 190500100

**Procedure Guidelines:**

**1.)** Initial service calls are authorized up to a dollar amount specified in writing on the work order. If repairs are going to exceed this amount, Contractor must call the Rite Aid Repair and Maintenance Request line at (866) 532-9927 for a verbal approval or to submit a quote. For repairs in excess of $1,500, a written proposal per the attached Retail Facilities Proposal for Repair Procedure must be submitted. If the proposal is approved, Contractor will receive notification of the acceptance.

**2.)** Upon arriving at the store, Contractor must sign in the Vendor Log at the manager's office and use the store telephone to use the Integrated Voice Response (IVR) system, unless the Contractor is IVR exempt.
- For the IVR, Contractor must identify the number of technicians present.
- After work is completed or when leaving the store for any reason, Contractor must sign out on the Vendor Log and use the store telephone to log out using the IVR system (unless exempt). If the Vendor Log is unavailable, Contractor must advise the Rite Aid manager on duty of its actions.

**3.)** A Validated Service Ticket (VST), should include time and/or hours filled in by the manager, and the scope of work performed. If the technician disagrees with the time the Rite Aid manager fills in, s/he should place a note in the comment section. Both parties should read before they sign and use the comment section as necessary.

**4.)** Each trip to a Rite Aid store requires a separate VST or separate IVR entry for jobs not complete. Example: If the service call requires three trips to the store in order to complete the assigned work, submit three separate VST's with the invoice, or log in and out on the IVR with each visit.

**5.)** Include all work associated with a specific work order on one invoice, irrespective of    the number of days required to complete the work. Rite Aid Accounts Payable cannot process multiple invoices against one dispatch number.

**6.)** If a technician is denied access to the store by the store manager or does not receive cooperation to perform work requested and approved by the Retail Facilities Repair and Maintenance representative, instruct your technician to notify their supervisor; the supervisor will contact the dispatching Facility Administrator at (717) 730-8200 for assistance. **Rite Aid expects courteous and professional performance by all parties.**

Case ID: 190500100

# RETAIL FACILITIES PROPOSAL FOR REPAIR PROCEDURE

1. If repairs cannot be completed in the designated time frame or will exceed the authorization limit set by the Facilities Administrator at the time of dispatch, a recommendation for repair must be submitted to Rite Aid for approval ("Proposal" or "Quote").

2. The Proposal or Quote must provide the following information:

   a. Description of problem and short reason as to why problem occurred.

   b. Breakdown of material needed with price for each item, including permits, inspection fees, etc.

   c. Separate tax calculation.

   d. Breakdown of number of labor hours needed to complete work, by technician.

   e. If applicable, trip charge, initial service call, GC OH&P or management fee.

   f. Any rental or other charges (freight, crane, etc.).

   g. Total of above charges.

   h. Analysis of necessity of repair at this time.

   i. Availability of material and ship date, if applicable.

   j. Estimated completion date and time.

3. For additional work authorization over the initial authorization, Contractor must obtain verbal approval to proceed with work while the Contractor is on site; Contractor must then submit the revised approved cost for incorporation into the existing dispatch number.

4. All Proposals will be accepted as NOT TO EXCEED itemized quotes and not as a lump sum.

Case ID: 190500100

# RETAIL FACILITIES INVOICE PROCEDURE

Below is a list of the specific procedures to be followed when invoicing to Rite Aid Corporation.

1. All invoices <u>MUST</u> be clearly labeled **"Invoice" with an invoice date and number.**  Rite Aid does not pay from statements.

2. All invoices <u>MUST</u> identify **store number and location and the exact date(s) of service.**

3. Rite Aid can accommodate spreadsheet billings for multiple locations for fixed price contract agreements. Contact the appropriate Rite Aid Retail Facilities representative for spreadsheet billing requirements.

4. All invoices <u>MUST</u> identify **contractor's name, vendor number, complete address and phone number.**

5. All invoices <u>MUST</u> show the **dispatch number and a comprehensive description of the work performed.**

6. All invoices <u>MUST</u> have a VST, IVR record or approved alternative.

7. Invoices submitted without a VST or its alternative will not be paid.

8. All invoices must contain either the negotiated contract rate and its ancillaries, or the breakdown identified in Paragraph 2, Page D-4.

**INVOICES MUST BE SUBMITTED IN THE APPROVED FORMAT THROUGH THE ONLINE SERVICE PORTAL.  NO PAPER INVOICES SHOULD BE MAILED UNLESS REQUESTED.**

Case ID: 190500100


**PHARMACY**

**WORK ORDER:**

Date Reported:      11/17/2007 4:08:20 PM
Date Committed:   11/19/2007 5:00:00 PM
Priority:                24 HOURS

| | | | |
|---|---|---|---|
| Operator ID: | **Cheryl Evans** | | |
| Requester Name: | **MANAGER, Jason** | Alternate Contact: | **ASSISTANT MANAGER** |
| Telephone Number: | **814-749-7872** | Alt Contact Phone: | **814-749-7872** |
| Cost Center: | | | |

Location ID:
Description:          **RITE AID STORE -**
Mall Name:
Address:

                      **NANTY GLO , PA 15943-1254 US**

Service Location:
Request Code:     **PLUMBING REPAIR**

**urinal is not operational no water no flush –can use comode until Monday**

**Comments: What is the nature of the problem? urinal not working
Is there any flooding as a result of the leak? If yes, dispatch water extraction as a separate
work order. No
Verify the location of the issue (pharmacy, restroom, outside,etc) n
If the leak is outside, has the city performed any recent work? n
If the issue is sewage backup, will the store need Water Extraction or Sanitizing work? If yes,
dispatch separate work order. Yes
Can the area be cautioned off to prevent usage or injury until service (if applicable)? Yes
Has the problem caused any damage inside the store? Note the approximate size of the
damaged area. no
What safety issues (if any) are being caused by the issue (risk of falling, etc.)? no**

Provider:
Provider Contact:
Provider Telephone:                                           DNE.                          $
Provider Fax:        .. .. ...                   Release # :

Provider will observe all relevant current code authorities' rules and regulations, including safety regulations, and
be licensed, insured, and bonded, as required by applicable state law where work is performed. Provider must
check in by calling 1-866-532-9931 when arriving on site.

Provider will not exceed DNE stated above without prior approval. If work is expected to exceed this amount,
technician must call the Service Solutions call center at 1-866-532-9927 and provider's service desk must
submit a Request for Proposal or Quote on-line.

To ensure the efficient and timely processing of an invoice, follow the instructions set forth below.

To avoid a delay in processing your invoice, please follow these instructions:

Technician must check in and out of the store using the above IVR (Integrated Voice Response) number 1-866-
532-9931 (failure to check in and out with the store and IVR system could result in invoice challenge and poor
provider scorecard rating).

Submit this work ticket or your company's work ticket complete with Rite Aid store management signature and
store stamp. You must submit your invoice online (www.fmpilot.com/riteaid), and attach the signed/stamped
work ticket or your payment will be delayed. Paper invoices sent to Rite Aid will not be paid.

Invoices submitted with missing information will be challenged on-line automatically. Invoices that exceed the
DNE (Do Not Exceed) stated above or an approved increase.

** INVOICES SUBMITTED 45 DAYS OR MORE FROM COMPLETION OF WORK WILL NOT BE PROCESSED
FOR PAYMENT **

If these directions are not followed accurately, or if the invoice total is greater than the DNE or the approved
increase, the invoice will be returned to you without payment.

Customer Signature: _____ Date_____

Vendor Signature: _____

Case ID: 190500100

| Online Vendor Invoice | (FACILITY MAINT. GROUP) CAMP HILL, PA 17011 Check #: Check Date: 10/25/2007 | INVOICE Vendor Inv #: Invoice Date: 10/22/2007 Service Date: 10/22/2007 Received Date: 10/19/2007 Date Approved: 10/22/2007 |
|---|---|---|

**Billing Address:**
RITE-AID CORPORATION
PO BOX 1169 - ATTN: ACCOUNTS PAYABLE DEPT
CAMP HILL, PA 17011-1169

**Location Address:**
RITE AID STORE -
SHENANDOAH , PA 17976-2332
570-462-1924
RIT-00208

| Work details | | |
|---|---|---|
| W/O# (FWO#) | Status: COMP Provider | Batch ID: Equipment |

**Requested by:**
**Service Details:** Tom stated that the drain on the roof of his drive thru is busted making water overflow and leak. Need fixed asap, techs for equip. won't service until drain is fixed
**Description of Work Done:**      (FACILITY MAINT. GROUP) - 10/22/2007 12:43:49 PM
Replaced Rubber boot and re-glued PVC assembly at roof drain above drive thru
**************************************************************************
**10/19/2007 11:11:33 AM** changing the scheduled date and the priority per previous note when I talked w/ tom the store mgr. **************************************************************************
      - **10/19/2007 11:10:02 AM** Called          : from rite aid and he stated that          called him and asked for the details. Tom stated that it was about to rain and          offered service for monday and tom said that was reasonable. service on monday 10/22
**************************************************************** Terri Sirisakyot -
**10/19/2007 11:08:25 AM**          called and he said          at the store told him this was not an emergency call, that monday would be fine to have the work fixed. Tom said its pouring down rain anyways. I changed from P4 to a P24,     I said he would be back out there on monday.
**************************************************************** Alan Cooper -
**10/19/2007 10:55:10 AM** .          stated that he will accept the work order.
**************************************************************** What is the nature of the problem? drain on roof of drive thru is busted Is there any flooding as a result of the leak? If yes, dispatch water extraction as a separate work order. No Verify the location of the issue (pharmacy, restroom, outside,etc) drive thru roof If the leak is outside, has the city performed any recent work? no If the issue is sewage backup, will the store need Water Extraction or Sanitizing work? If yes, dispatch separate work order. No Can the area be cautioned off to prevent usage or injury until service (if applicable)? Has the problem caused any damage inside the store? Note the approximate size of the damaged area. no What safety issues (if any) are being caused by the issue (risk of falling, etc.)? not able to perform drive thru equipment service.

| Item # | Description | | | | | | | Line Cost |
|---|---|---|---|---|---|---|---|---|
| | Name | Date | Start | Finish | Hours | Rate | OT | Line Cost |
| | FACILITY MAINT. GROU | 10/22/2007 | 10:41 | 12:52 | 2.20 | $0.00 | N | $0.00 |
| | FACILITY MAINT. GROU | 10/22/2007 | 11:23 | 11:23 | 2.20 | $ | N | $ |
| 1 | | | | | | Labor costs: | | $ |
| | Date | Item Description | | | | Quantity | Line Cost | |
| | 10/22/2007 | Travel Charge | | | | 1 | $ | |
| 2 | | | | | | Material / Other Costs: | | $ |
| | | | | | | Invoice Sub-Total: | | $ |
| | | | | | | Tax: | | $0.00 |

**Invoice Total: $**

*Submitted Invoice Total:        $)*

*If the submitted total is not the same as the invoice total, you must click "Submit" to update the submitted invoice.*

D - 7

Case ID: 190500100

# RETAIL FACILITIES VALIDATED SERVICE TICKET EXCEPTION FORM

Rite Aid recognizes that the burden of supplying a Validated Service Ticket (VST) in some preventative maintenance programs is overly burdensome and does not add to the value of a negotiated Agreement.  In other instances, in coordination and compliance with Rite Aid's accounting compliance policies, the supporting paperwork is a mandatory supplement to invoicing and no exceptions will be made.

If you wish to apply for a VST Exception for your company or a particular service, please fill out the information below and submit it for consideration to:

        Robert Fazakerley, Vice President, Retail and Corporate Facilities
        Rite Aid Corporation
        30 Hunter Lane
        Camp Hill, PA 17011

Contractor: _____

Service Type (if all, state All): _____
Please note effective September 1, 2011, NO EXCEPTIONS will be granted for Snow Removal Services.

Service Area(s): _____

Date of Application: _____

Potential Annual Value of Agreement: _____

Contract Date to Start (if multiple, state Multiple): _____

Contract Date to Expire (if multiple, state Multiple): _____

Please describe the method(s) you intend to use in lieu of providing Validated Service Tickets:

_____

_____

_____

Upon review, your application is-   APPROVED ☐     DENIED ☐
**By:**                 **Date**                       **Initial**

Robert Fazakerley
      VP, Corp. and Retail Facilities     _____     _____

☐ Other Department
    Dept Name_____
    By _____     _____     _____

D - 8

Case ID: 190500100

## <u>AFFIRMATION OF SUPPORTING DOCUMENTATION FOR INVOICES</u>

This statement is designed to be used by Rite Aid Service Providers with a current fully executed preventative service agreement AND approved VST Exception Form. In compliance with Rite Aid's contract Audit provision and further pursuant to Invoice Procedures identified in Exhibit D, this document memorializes an approved exception to the supporting documentation requirements for invoicing in the above referenced documents, as follows:

1.  In lieu of a Rite Aid or Service Provider generated Validated Service Ticket, the service provider may provide an internal IVR summary to verify service completions; OR
2.  In lieu of an internal IVR or a third-party IVR system designated by Rite Aid, the Service Provider may verify service completions through an internal post-service verification method (e.g. phone call confirmation), and provide a summary copy of verifications; OR
3.  In lieu of the above, other advanced technological methods demonstrating service compliance, as demonstrated to and reviewed by Rite Aid representatives;
    AND, in conjunction with 1, 2 or 3.
4.  Details of the post-service verification, and/or any additional signed service tickets, must be made available to Rite Aid upon demand, within a reasonable period of time, not to exceed a maximum of thirty (30) days.

The undersigned, being an Owner, Officer or other Principal of the Service Provider, having performed reasonable due diligence, hereby affirms that the charges for Services on the attached invoice are valid, and that Service Provider has complied with the above guidelines.

Service Provider Name: _____

By: _____

Print: _____

Its: _____

For (service type): _____

Case ID: 190500100

# Exhibit E

Add / Delete Form

DATE
[date]    EXHIBIT E

[vendor]

FLOOR CARE
DELETION



| Location | Address | City | State | Zip | District |
|---|---|---|---|---|---|
| [store] | [address] | [city] | [st] | [zip] | [district] |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

**Important Notice:**
To ensure properties are added and or deleted as
necessary, and to ensure code compliance,
<u>CONTRACTOR</u> must return this signed by an
authorized representative, by mailing/faxing to
Rite Aid within five (5) business days following
receipt.  Rite Aid  will automatically delete/add
those site(s) in said deletion/addition notice and
attach the addenda to the Agreement.
Thank you.


ACKNOWLEDGED:


_____
Contractor Representative

Date: _____

DATE
[date]          EXHIBIT E

[vendor]

**RITE
AID**

**FLOOR CARE
ADDITION**

| Store | Address | City | State | Zip | Total Basic Freq | Cost per Basic | Scrub Freq | Cost per Scrub | Top Coat Freq | Cost per Top Coat | Strip Freq | Cost per Strip |
|-------|---------|------|-------|-----|-----------------|----------------|------------|----------------|---------------|-------------------|------------|----------------|
| [store] | [address] | [city] | [st] | [zip] | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

**Important Notice:**
To ensure properties are added and or deleted
as necessary, and to ensure code compliance,
CONTRACTOR  must return this signed by an
authorized representative, by mailing/faxing to
Rite Aid within five (5) business days following
receipt.  Rite Aid  will automatically delete/add
those site(s) in said deletion/addition notice and
attach the addenda to the Agreement.
Thank you.

ACKNOWLEDGED:

_____

Contractor Representative

Date: _____

**EXHIBIT "E"**

Case ID: 190500100

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
11/30/2015

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | |
|---|---|---|
| Cothran Insurance<br>PO Box 15005<br>423 Laxton Rd<br>Lynchburg VA 24502 | **CONTACT NAME:** Leah Spence | |
| | **PHONE (A/C, No, Ext):** 434-239-2886 | **FAX (A/C, No):** 434-237-0085 |
| | **E-MAIL ADDRESS:** cois@cothraninsurance.com | |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| **INSURED** IMAGE-1<br>IMAGE BY J & K LLC<br>PO BOX 2308<br>FOREST VA 24551 | INSURER A : Nationwide Insurance | |
| | INSURER B : Essex Insurance Company | |
| | INSURER C : Princeton Excess & Surplus Lin | 10786 |
| | INSURER D : AIM Mutual Insurance Company | |
| | INSURER E : LM Insurance Corporation | 33600 |
| | INSURER F : Travelers | 5606 |

## COVERAGES          CERTIFICATE NUMBER: 1622950399          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | | ADDL INSD | SUBR WVD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| A<br>A<br>A<br>B | X | | X | COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE  X  OCCUR | ACPGLGO2425845779<br>ACPGLDO3006832716<br>ACPGLPO5916056012<br>3C06539 | 9/13/2015<br>9/13/2015<br>3/1/2015<br>9/13/2015 | 9/13/2016<br>9/13/2016<br>3/1/2016<br>9/13/2016 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | | | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | GEN'L AGGREGATE LIMIT APPLIES PER:<br>POLICY  PRO-JECT  LOC<br>OTHER: | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| A | X | | | AUTOMOBILE LIABILITY<br>X ANY AUTO<br>ALL OWNED AUTOS  SCHEDULED AUTOS<br>X HIRED AUTOS  NON-OWNED AUTOS<br>X Hired-A PD | ACPBA2425845779 | 9/13/2015 | 9/13/2016 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | HA PD Limit | $Unlimited |
| C | X | | X | UMBRELLA LIAB  X  OCCUR<br>EXCESS LIAB  CLAIMS-MADE<br>DED  RETENTION $ | 82A3UB00003 1001 | 9/13/2015 | 9/13/2016 | EACH OCCURRENCE | $3,000,000 |
| | | | | | | | | AGGREGATE | $3,000,000 |
| A<br>D<br>E<br>E<br>F | | | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y / N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  Y  N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | ACPWC3016812317<br>ACPWCF3006812284<br>AWC40070269702015A<br>WC5-35S-542993-014<br>WC5-35S-528854-015<br>6JUB-2E453059-9-15 | 9/7/2015<br>9/7/2015<br>6/1/2015<br>9/16/2015<br>5/31/2015<br>9/16/2015 | 9/7/2016<br>9/7/2016<br>6/1/2016<br>9/16/2016<br>5/31/2016<br>9/16/2016 | X PER STATUTE   OTH-ER | |
| | | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Per CG7331, if required by written contract, the certificate holder is an Additional Insured and/or Waiver of Subrogation applies in favor of the certificate holder with respect to the GL.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Rite Aid HDQTRS Corp. and/ or its affiliated companies<br>30 Hunter Lane<br>Camp Hill PA 17011 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE |

© 1988-2014 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2014/01)          The ACORD name and logo are registered marks of ACORD

Case ID: 190500100

# EXHIBIT "F"

Case ID: 190500100



**Rite Aid**

- **MAILING ADDRESS**
  Risk Mgmt – Claims VGW
  P.O. Box 3165
  Harrisburg, PA  17105

- **CORPORATE OFFICE**
  30 Hunter Lane
  Camp Hill, PA  17011

- **(717) 761-2633**

April 5, 2016

<u>Via Certified and Regular Mail</u>

Image By J & K LLC
PO Box 2308
Forest VA 24551

RE:    **Insured**    :    **Rite Aid**
        **Claimant**    :    **Miraiam Galarza**
        **D/Incident**    :    **March 2, 2016**
        **Our File #**    :    **GL2016102343**

Dear Vendor:

Miriam Galarza reports injury after allegedly falling on a freshly mopped floor.  Our records indicate you were on the property at this time of alleged incident servicing/cleaning the floors.  This letter is to serve as tender for this incident.  Ms. Galarza is represented by Attorney Alan Shapey of Lipsig, Shapey, Manus, & Moverman, P.C., who can be reached at (212) 285-3300.

Please verify receipt of this letter and acknowledge our tender in writing at your earliest opportunity.  If you wish to I can be reached at 717-761-2633 x5064.

Thank you for your immediate attention to this matter.

Sincerely,

Tanya Tumas
Claims Associate
Phone: (717) 761-2633 x 5064
Fax:    (717) 731-4701

cc: Law Offices of Lipsig, Shapey, manus, & Moverman, P.C.  40 Fulton Street New York, NY 10038-1850

# EXHIBIT "B"

Bradley J. Vance, Esquire
Attorney I.D.#58850
REGER RIZZO & DARNALL LLP
Cira Centre, 13th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 495-6500
(215) 496-6600
bvance@regerlaw.com

Attorney for Defendant and Attested by the
Nationwide Mutual Insurance Judicial Records
improperly identified and MAY 2019 08:00 am
Plaintiff as Nationwide Insurance    M. RUSSO

---

| RITE AID HDQTRS CORP. | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | MAY TERM, 2019 |
| | : | CASE NO.  00100 |
| IMAGE BY J&K, LLC and | : | |
| NATIONWIDE MUTUAL INSURANCE | : | |
| COMPANY | : | |
| | : | |
| **Defendants,** | : | |

## ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Defendant, Nationwide Mutual Insurance Company, improperly identified and named by the Plaintiff as Nationwide Insurance regarding the above-captioned matter.

REGER RIZZO & DARNALL LLP

By: _____
Bradley J. Vance, Esquire
Attorney for Defendant
Nationwide Mutual Insurance Company
improperly identified and named by the
Plaintiff as Nationwide Insurance

Dated: 5|10|19

Case ID: 190500100

Bradley J. Vance, Esquire
Attorney I.D.#58850
REGER RIZZO & DARNALL LLP
Cira Centre, 13th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 495-6500
(215) 496-6600
bvance@regerlaw.com

Attorney for Defendant,
Nationwide Mutual Insurance Company
improperly identified and named by the
Plaintiff as Nationwide Insurance

| | | |
|---|---|---|
| RITE AID HDQTRS CORP. | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | MAY TERM, 2019 |
| | : | CASE NO. 00100 |
| IMAGE BY J&K, LLC and | : | |
| NATIONWIDE MUTUAL INSURANCE | : | |
| COMPANY | : | |
| | : | |
| **Defendants,** | : | |

## CERTIFICATE OF SERVICE

I, Bradley J. Vance, Esquire, attorney for Nationwide Mutual Insurance Company improperly identified and named by the Plaintiff as Nationwide Insurance hereby certify that a true and correct copy of my Entry of Appearance was served on May 09, 2019 via United States First Class Mail and/or Electronic Mail to all counsel and unrepresented parties.

REGER RIZZO & DARNALL LLP

Dated: 5|10|19

By: _____
Bradley J. Vance, Esquire
Attorney for Defendant
Nationwide Mutual Insurance Company
improperly identified and named by the
Plaintiff as Nationwide Insurance

# EXHIBIT

## "C"

Bradley J. Vance, Esquire
Attorney I.D.#58850
REGER RIZZO & DARNALL LLP
Cira Centre, 13th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 495-6500
(215) 496-6600
bvance@regerlaw.com

Attorney for Defendant,
Nationwide Mutual Insurance Company
improperly identified and named by the
Plaintiff as Nationwide Insurance

| | | |
|---|---|---|
| RITE AID HDQTRS CORP. | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | MAY TERM, 2019 |
| IMAGE BY J&K, LLC and | : | CASE NO. 00100 |
| NATIONWIDE MUTUAL INSURANCE | : | |
| COMPANY | : | |
| | : | |
| **Defendants,** | : | |

## <u>NOTICE OF FILING OF NOTICE OF REMOVAL</u>

To:   Clerk of Court
       Philadelphia County

Seth B. Rubine, Esquire
Rubine & Rubine Law, LLC
65 Harristown Road, Suite 203
Glen Rock, New Jersey 07452
srubine@rubinelaw.com

Image by J&K, LLC
401 E. Pratt Street
Suite 423
Baltimore, Maryland 21202

PLEASE TAKE NOTICE that on May 14, 2019, pursuant to 28 U.S.C. §§1332, 1441, 1446, Defendant filed a Notice of Removal for the above-captioned action from Court of Common Pleas of Philadelphia County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania. A copy of the Notice of Removal is attached hereto as Exhibit "1".

**REGER RIZZO & DARNALL LLP**

Date: _____

By: _____
     Bradley J. Vance, Esquire
     Attorney for Defendant
     Nationwide Mutual Insurance Co.